**UNITED STATES v. EISENMINGER et al.**

(District Court, D. Delaware. December 7, 1926.)

No. 28.

1. Conspiracy ⚚43(6)—Indictment for conspiracy to violate National Prohibition Act by manufacture of beer, and unlawful removal and disposal thereof, held insufficient (Criminal Code, § 37 [Comp. St. § 10201]; National Prohibition Act, tit. 2, §§ 3, 37 [Comp. St. §§ 10138½aa, 10138½x]).

Under Criminal Code, § 37 (Comp. St. § 10201), alleging conspiracy "to commit an offense against the United States of America, to wit, to violate the provisions of * * * National Prohibition Act, * * * that is to say, to manufacture * * * intoxicating liquor, to wit, beer, * * * and unlawfully to remove said beer, and unlawfully to dispose of same, * * * in violation of title 2 of National Prohibition Act," held insufficient to charge offense under ·National Prohibition Act, tit. 2, §§ 3, or 37 (Comp. St. §§ 10138½aa, 10138½x).

2. Conspiracy ⚚43(6)—Charge of conspiracy to violate National Prohibition Act is insufficient to charge conspiracy to commit offense against United States (Criminal Code, § 37 [Comp. St. § 10201]).

Allegation of conspiracy "to violate the provisions of the act of Congress known as the National Prohibition Act" is insufficient to charge a conspiracy to commit an offense against the United States, under Criminal Code, § 37 (Comp. St. § 10201).

3. Indictment and information ⚚110(2)—Indictment for statutory offense should pursue precise technical language of statute in alleging essential facts and circumstances.

It is generally necessary, in an indictment for a statutory offense, not only to allege all facts and circumstances essential to the offense, but also to pursue the precise technical language of the statute in which they are expressed.

4. Indictment and information ⚚60.

An indictment must charge each and every element of an offense.

5. Conspiracy ⚚43(6)—Indictment for conspiracy must show that act intended embraced all elements essential to constitute offense (Criminal Code, § 37 [Comp. St. § 10201]).

Under Criminal Code, § 37 (Comp. St. § 10201), indictment for conspiracy must show that act agreed to be done embraced all elements essential to constitute an offense against the United States, and is insufficient if it appears on its face that one or more of such elements are wanting.

6. Conspiracy ⚚43(6)—Indictment for conspiracy to commit offense need not describe offense with particularity.

An indictment for conspiracy to commit an offense need not describe that offense with the particularity required in an indictment for the offense itself.

7. Conspiracy ⚚43(6)—Indictment for conspiracy must plead facts identifying offense and enabling defendants to prepare for trial.

In indictment for conspiracy, facts must be pleaded with sufficient definiteness and certainty to identify the offense, and enable defendants properly to prepare for trial and to secure protection against double jeopardy.

8. Intoxicating liquors ⚚222—Provision of National Prohibition Act relating to "negative averments" does not affect affirmative essential elements (National Prohibition Act, tit. 2, § 32 [Comp. St. § 10138½s]).

National Prohibition Act, tit. 2, § 32 (Comp. St. § 10138½s), declaring it unnecessary to include "any defensive negative averments" in indictment, does not affect affirmative essential elements, and goes no further than to permit the substitution of "prohibited and unlawful" for an allegation that accused are not within exception; "negative averments" meaning those in which a negative is used.

9. Indictment and information ⚚111(3)—Indictment need not negative statutory exception, unless so incorporated in clause defining offense that one cannot be read without the other.

It is not necessary to anticipate and negative matters of defense, and indictment need not set out that defendants are not within exceptions, unless the exceptions are contained in the clause which defines the offense, and are so incorporated with it that one cannot be read without the other.

10. Conspiracy ⚚43(6)—Indictment for conspiracy to manufacture, unlawfully remove, and dispose of beer held defective in its reference to manufacture, not charged to be unlawful (Criminal Code, § 37 [Comp. St. § 10201]; National Prohibition Act [Comp. St. § 10138¼ et seq.]).

Under Criminal Code, § 37 (Comp. St. § 10201), indictment charging conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), that is, "to manufacture * * * intoxicating liquor, to wit, beer, * * * and unlawfully to remove * * * and unlawfully to dispose of same," held defective in so far as it charged as part of the object of the conspiracy the manufacture of beer, neither shown nor charged to be unlawful.

11. Indictment and information ⚚125(5½)—Count charging conspiracy to commit more than one offense is not double.

Commission of more than one offense may be the object of one conspiracy, and a count so charging is not double.

12. Indictment and information ⚚119—Unnecessary words may be rejected as surplusage, unless they are descriptive of identity of that which is essential.

As a general rule, all unnecessary words may be rejected as surplusage, if the indictment would be good on striking them out, though an exception exists where the immaterial averments are in a sense descriptive of the identity of what is essential.

13. Indictment and information ⚚120—Legal and innocent acts may not be treated as surplusage in conspiracy indictment.

Legal and innocent acts may not be included among the offenses alleged to constitute the object of a conspiracy, and regarded as surplusage.

**14. Conspiracy ⬦⇒43(5)—Overt acts alleged need not be criminal.**

It is not necessary that overt acts alleged in indictment for conspiracy be criminal.

**15. Conspiracy ⬦⇒43(5)—Indictment need not show that alleged overt act would effect object of conspiracy.**

Indictment for conspiracy need not show on its face that an alleged overt act would in fact effect the object of the conspiracy.

Carl H. Eisenminger and others were indicted for conspiracy to commit an offense against the United States. On demurrer to indictment. Demurrer sustained as to one count, and overruled as to the others.

David J. Reinhardt, U. S. Atty., of Wilmington, Del.

Charles F. Curley, of Wilmington, Del., for defendant Eisenminger.

J. Paul McElree, of West Chester, Pa., for defendant Banning.

Philip L. Garrett, of Wilmington, Del., for defendant Olivere.

Wilbur L. Adams, of Wilmington, Del., for defendant Drzewicki.

John W. Huxley, Jr., of Wilmington, Del., for defendant Green.

MORRIS, District Judge. [1] To the three counts of an indictment, each charging conspiracy, found against 23 persons, the defendants have demurred. The primary objections advanced against the first count are that, notwithstanding section 37 of the federal Criminal Code (Comp. St. § 10201), upon which the counts are based, provides, "If two or more persons conspire * * * to commit any offense against the United States, * * * and one or more of such parties do any act to effect the object of the conspiracy," they shall be punished as therein stated, yet that count does not set forth or disclose that the object of the alleged conspiracy was an offense against the United States, and that if it does the offense is not pleaded with sufficient certainty to enable the defendants to identify it.

The allegation of that count is that the defendants conspired "to commit an offense against the United States of America, to wit, to violate the provisions of the act of Congress known as the 'National Prohibition Act,' and commonly known as the 'Volstead Act'; that is to say, to manufacture at the premises known as the Bavarian Brewery, situate at the northwest corner of Fifth and Clayton streets, in said city of Wilmington, state and district of Delaware, from time to time during the continuance of said conspiracy, large quantities of intoxicating liquor, to wit, beer,

16 F.(2d)—52

then and there to contain more than one-half of 1 per centum of alcohol by volume, and then and there to be fit for use for beverage purposes, and unlawfully to remove said beer from said brewery premises above described, and unlawfully to dispose of same otherwise than by the manufacture of said beer into cereal beverages containing less than one-half of 1 per centum of alcohol by volume, without first having reduced the alcoholic content of said beer below said one-half of 1 per centum of alcohol by volume, in violation of title 2 of said National Prohibition Act."

[2] The allegation "to violate the provisions of the act of Congress known as the National Prohibition Act" obviously does not set forth a conspiracy to commit an offense against the United States (United States v. Dowling [D. C.] 278 F. 630, United States v. Beiner [D. C.] 275 F. 704), and serves no purpose in pleading that would not be equally served by an allegation of a conspiracy to violate the federal Criminal Code. Had the pleadings stopped there, the defendants would not have been advised of the offense they are alleged to have conspired to commit, for the National Prohibition Act (Comp. St. § 10138¼ et seq.), like the Criminal Code, creates many offenses against the United States. To ascertain the offense, the commission of which was the object of the conspiracy, resort must be had to the words of the indictment describing that offense.

The crucial words there found are "to manufacture," "unlawfully to remove," and "unlawfully to dispose of beer containing more than one-half of 1 per centum of alcohol by volume." It would seem that these and their accompanying words point more nearly to the acts forbidden by section 3, or by section 37, of title 2 of the Volstead Act (Comp. St. §§ 10138½aa, 10138½x), than to any other of the many acts made offenses by that statute. Do they set out an offense under either of those sections? If so, under which? Section 3 of title 2 says:

"No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish, or possess any intoxicating liquor except as authorized in this act. * * * * "

Section 37, second and fourth paragraphs, states:

"A manufacturer of any beverage containing less than one-half of 1 per centum of alcohol by volume may, on making application and giving such bond as the commissioner shall prescribe, be given a permit to develop

in the manufacture thereof by the usual methods of fermentation and fortification or otherwise a liquid such as beer, ale, porter, or wine, containing more than one-half of 1 per centum of alcohol by volume, but before any such liquid is withdrawn from the factory or otherwise disposed of the alcoholic contents thereof shall under such rules and regulations as the commissioner may prescribe be reduced below such one-half of 1 per centum of alcohol: Provided, that such liquid may be removed and transported, under bond and under such regulations as the commissioner may prescribe, from one bonded plant or warehouse to another for the purpose of having the alcohol extracted therefrom. And such liquids may be developed, under permit, by persons other than the manufacturers of beverages containing less than one-half of 1 per centum of alcohol by volume, and sold to such manufacturers for conversion into such beverages. * * *

"In any case where the manufacturer is charged with manufacturing or selling for beverage purposes any malt, vinous, or fermented liquids containing one-half of 1 per centum or more of alcohol by volume, or in any case where the manufacturer, having been permitted by the commissioner to develop a liquid such as ale, beer, porter, or wine containing more than one-half of 1 per centum of alcohol by volume in the manner and for the purpose herein provided, is charged with failure to reduce the alcoholic content of any such liquid below such one-half of 1 per centum before withdrawing the same from the factory, then in either such case the burden of proof shall be on such manufacturer to show that such liquid so manufactured, sold, or withdrawn contains less than one-half of 1 per centum of alcohol by volume. * * *"

[3] The rule that it is generally necessary, in an indictment setting forth a statutory offense, to allege not only all the facts and circumstances essential to constitute the offense as defined in the statute, but also to pursue the precise technical language of the statute in which they are expressed (Clark's Crim. Proc. p. 305), the failure to employ in the first count of the indictment any word of the third section of the Volstead Act other than "manufacture," the failure to charge that the manufacture alleged was unlawful or in violation of the statute, and the affirmative allegations that the beer was disposed of without first having its alcoholic content reduced below the maximum permitted, lead inevitably to the conclusion that the object of the conspiracy charged was not to commit any of the offenses enumerated in section 3 of title 2 of the National Prohibition Act.

On the other hand, it is reasonably manifest that an offense under section 37 of the National Prohibition Act was intended to be alleged as the object of the conspiracy. A charge of manufacturing, not unlawfully, beer having an alcoholic content of more than one-half of 1 per centum by volume, coupled with the unlawful removal and disposal of the beer, "otherwise than by the manufacture of such beer into cereal beverages containing less than one-half of 1 per centum by volume, without first having reduced the alcoholic content of said beer below said one-half of 1 per centum by volume," seems to find response in no other section of that statute.

[4] But are the allegations sufficient to state an offense under that section? It is, of course, hornbook law that an indictment must charge each and every element of an offense. United States v. Standard Brewery, 251 U. S. 210, 40 S. Ct. 139, 64 L. Ed. 229. To be sufficient, it must show on its face that an offense has been committed. In a conspiracy indictment, it must appear that the defendants conspired either to commit an offense against the United States or to defraud the United States. With the latter we are not here concerned.

[5] A conspiracy indictment must therefore show that the act agreed to be done embraced all the elements essential to constitute an offense against the United States. Obviously, a conspiracy indictment is not sufficient if it appears upon its face that one or more of the elements of an offense are wanting in the acts agreed to be done. See Clark's Crim. Proc. (2d Ed.) p. 181.

[6] It is, of course, likewise settled that, in an indictment for conspiracy to commit an offense, such offense need not be described with the particularity required in an indictment for the offense itself. Yet this rule deals only with particularity, and affords no warrant for the omission in the indictment of any essential element of the offense constituting the object of the alleged conspiracy.

[7] Moreover, even in indictments for conspiracy the facts must be pleaded with sufficient definiteness and certainty to identify the offense, to enable the defendants properly to prepare for trial, and to secure protection against double jeopardy. Brauer v. United States, 299 F. (C. C. A. 3) 10; Zucker v. United States, 288 F. (C. C. A. 3) 12; Robilio v. United States, 291 F. (C. C. A. 6) 975.

[8] Section 32 of title 2 of the Volstead Act (Comp. St. § 10138½s) provides:

"In any affidavit, information, or indict-

ment for the violation of this act, separate offenses may be united in separate counts and the defendant may be tried on all at one trial and the penalty for all offenses may be imposed. It shall not be necessary in any affidavit, information, or indictment to give the name of the purchaser or to include any defensive negative averments, but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful, but this provision shall not be construed to preclude the trial court from directing the furnishing the defendant a bill of particulars when it deems it proper to do so."

This section, by reason of the limitation upon its scope fixed by its first sentence, is without pertinence to indictments for conspiracy for such indictments charge the violation of section 37 of the federal Criminal Code not violations of the Volstead Act (Comp. St. § 10138¼ et seq.). Brauer v. United States, supra. Moreover, that section does not even purport to deal with the affirmative essential elements of any offense, much less with the affirmative essential elements of the objective offense in conspiracy indictments. Brauer v. United States, supra. It authorizes the employment of "prohibited and unlawful" in the place of "defensive negative averments" only. Negative averments are defined by Bouvier as "those in which a negative is used."

[9] A clearer grasp of the term "defensive negative averments" may be had, however, I think, if it be remembered that one of the elementary principles of pleading in criminal cases is that it is not necessary to anticipate and negative matters of defense, and that where the statute creating the offense contains exceptions or provisos, not so incorporated with the clauses of the statute defining the offense that they enter into its description and are inseparable from it, the indictment need not set out that the defendants do not come within the exceptions or negative the provisos, but that, on the other hand, where the exceptions are stated in the clause which defines the offense, and are so incorporated with it that one cannot be read without the other, or, if embodied in a subsequent clause, section, or statute, they are so incorporated with the words used to define the offense that they become a part of the definition, it is necessary, at least in the absence of statute, to negative them, so that the description of the offense in the indictment may correspond with the description and elements in the statute. United States v. Cook, 17 Wall. 168, 21 L. Ed. 538, Clark's Crim. Proc. pp. 314–320. Thus it would seem that, at most, section 32

goes no further than to permit the substitution of "prohibited and unlawful" for an allegation that the accused are not within an exception or proviso of the statute defining the offense.

The first count of the indictment, as I understand it, does not set forth all the essential affirmative elements of any offense defined or described in section 37 of title 2 of the Volstead Act, and consequently fails to charge that the object of the alleged conspiracy was an offense against the United States. That section deals with two classes of persons: (1) Manufacturers of beverages containing less than one-half of 1 per centum of alcohol by volume; and (2) persons other than the manufacturers of such beverages. To each class it gives the right to develop, under permit, liquids containing more than one-half of 1 per centum of alcohol by volume. But to the former it denies the right to withdraw that liquid from the factory or otherwise to dispose of it without reducing the alcoholic content below the one-half of 1 per centum of alcohol, while to the latter it expressly grants the right to sell (and hence, by necessary implication, to remove and transport) the liquid, without reduction of its alcoholic content, to "such manufacturers for conversion into such beverages." If the persons accused in the first count are persons other than the manufacturers of beverages containing less than one-half of 1 per centum of alcohol by volume, they had the right, by the express terms of section 37 of the statute, to do under permit every act set forth in that count.

So construed, and giving to the word "unlawful," as therein used, its greatest possible effect, the count could only mean that the persons accused were conspiring to do without a permit that which with a permit would be entirely legal. If, on the other hand, the persons accused in the first count are manufacturers, under permit, of a beverage containing less than one-half of 1 per centum of alcohol by volume, they were without right to withdraw the beer of high alcoholic content from the factory, or otherwise dispose thereof, without first reducing the alcoholic content below one-half of 1 per centum of alcohol by volume. But there is no allegation that the defendants belong to the one class or to the other, and this omission may not be supplied by intendment. United States v. Post (D. C.) 113 F. 852, 854; United States v. Cruikshank, 92 U. S. 542, 557, 558, 23 L. Ed. 588; 14 R. C. L. 73.

In short, the offense which the defendants conspired to commit is not identified by the

count in question. Certainty to that extent is mandatory. Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278. Nor is this conclusion in conflict with Rulovitch v. United States, 286 F. 315 (C. C. A. 3), for that indictment made it clear that the offenses which it was alleged the defendants conspired to commit were offenses under section 3, tit. 2, of the Volstead Act, and the particular words used identified the specific objects of the conspiracy. "Unlawful" was there given no greater effect, as I understand the Rulovitch Case, than to make unnecessary the negativing in the indictment that the contemplated acts of the defendants were within some exception to section 3. In Haynes v. United States, 4 F.(2d) 889 (C. C. A. 2), the offenses charged as the objects of the conspiracy were likewise those of section 3.

[10, 11] But the first count is fatally defective, I think, for an additional reason. Under section 37 of the Criminal Code the object of the conspiracy must be an offense against the United States or a fraud upon it. To commit more than one offense may be the object of one conspiracy, and a count is not double which charges it so. Bishop's Crim. Proc. § 226; Noyes v. State, 41 N. J. Law, 418, affirmed 43 N. J. Law, 672. But the first count here charges as part of the object of the conspiracy the manufacture of beer that is neither shown nor charged to be unlawful. The learned district attorney says that the charge with respect to "manufacture" may and should be treated as surplusage.

[12] Undoubtedly there is a general rule of law that all unnecessary words may be rejected as surplusage, if the indictment would be good upon striking them out. But that rule is not an unqualified one. An interwoven limitation upon the operation of that principle is that, if the immaterial averments are in any sense descriptive of the identity of what is essential, then they cannot be rejected as surplusage. Wharton's Criminal Ev. § 138. In U. S. v. Howard, Fed. Cas. No. 15,-403, Mr. Justice Story said: " * * * No allegation, whether it be necessary or unnecessary, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment, can ever be rejected as surplusage."

This limitation to the general rule is well illustrated by State v. Norkewicz, 3 Pennewill (Del.) 299, 51 A. 601. There the indictment was for the embezzlement of money. The statute provided (Rev. Code 1852, c. 153, § 1): "It shall be sufficient to allege the embezzlement to be of money without specifying any particular coin, or notes circulating as money. * * * " The kind of money embezzled was stated in the indictment but not proved at the trial. Upon motion for a directed verdict, the court held that, the kind of money having been specified, it became a material part of the averment, could not be rejected as surplusage, but must be proved as laid, and directed a verdict for the defendant. The object of an alleged conspiracy is that which identifies and describes the particular unlawful agreement or conspiracy with which the defendant stands charged. No part of that description may be ignored as surplusage. It must be proved as laid. Rabens v. United States, 146 F. 978 (C. C. A. 4).

[13, 14] In the whole history of the law of conspiracy there are but few reported cases holding that among the offenses alleged to constitute the object of a conspiracy legal and innocent acts may be included, but regarded as surplusage. I find myself not in accord with those cases. The conspiracy can but rarely be proved by direct evidence. Overt acts are accepted as circumstantial evidence bearing upon the existence of the combined intent or agreement. 6 A. & E. Enc. of Law (2d Ed.) 865. It is not necessary that the overt acts should be criminal. Wright (Carson) Criminal Conspiracies and Agreements, p. 132. One of the overt acts alleged in the first count of the indictment here is the manufacture and possession, not alleged to be unlawful, of beer containing more than one-half of 1 per centum of alcohol. Obviously, were the object of the conspiracy that which is alleged—the manufacture (not unlawful) and the unlawful removal and unlawful disposal of beer—the mere manufacture and possession of beer would necessarily be calculated to effect the object of the combination charged. But would it do so if the object of the conspiracy were not as alleged, but were merely the unlawful removal and unlawful disposal of beer?

[15] I am not unmindful that it need not appear from the face of the indictment that an alleged overt act would in fact effect the object of the conspiracy. Wright, Criminal Conspiracies and Agreements, p. 134. But this principle does not prevent our use of an overt act to illustrate that the incorporation of a legal act in the object of the conspiracy could and probably would be prejudicial to innocent defendants. If a legal act may be pleaded as a part of the object of a conspiracy, and the object of that conspiracy be effected by the committing of that legal act by any one of the persons alleged to be parties to the conspiracy, then, indeed, has a prosecu-

tion for conspiracy become a most potent instrumentality for the conviction of the innocent. I think that the rules of pleading in conspiracy cases should not be further relaxed to the prejudice of those accused, regardless of their guilt. It has in fact been long considered that there is in this country a tendency to extend the doctrine of conspiracy and utilize it for the indictment of persons suspected of crime of which there is difficulty of obtaining sufficient proof. Bouv. Dict. "Conspiracy."

In January of 1903, F. P. Blair, Esq., said in 37 Am. Law Rev. 33, under the title "The Judge-Made Law of Conspiracy," that "it has become in recent years quite the fashion in this country, where two or more are suspected of some crime, for public prosecutors to have them indicted for conspiracy. The courts have made it delightfully easy to secure a conviction, by relaxing the rules of pleading and enlarging the scope of testimony. Thus a great mass of decisions has accumulated, each court apparently vying with all the others to make new law, until now almost any sort of an agreement may be styled a conspiracy; any indictment containing the magic words 'combined and conspired subtilely and craftily' makes a good indictment, and any ⁂ ⁂ ⁂ evidence will prove the crime. ⁂ ⁂ ⁂ "

So widely has been the extension of the doctrine since those words were written that at the Judicial Conference held in 1925 under the Act of September 14, 1922 (42 Stat. 837), the Chief Justice of the United States and the Senior Circuit Judges made, in their Recommendations to the District Judges, this statement:

"We note the prevalent use of conspiracy indictments for converting a joint misdemeanor into a felony, and we express our conviction that, both for this purpose and for the purpose—or at least with the effect—of bringing in much improper evidence, the conspiracy statute is being much abused.

"Although in a particular case there may be no preconcert of plan, excepting that necessarily inherent in mere joint action, it is difficult to exclude that situation from the established definitions of conspiracy; yet the theory which permits us to call the aborted plan a greater offense than the completed crime supposes a serious and substantially continued group scheme for co-operative law breaking. We observe so many conspiracy prosecutions which do not have this substantial base that we fear the creation of a general impression, very harmful to law enforcement, that this method of prosecution is used arbitrarily and harshly. Further the rules of evidence in conspiracy cases make them most difficult to try without prejudice to an innocent defendant."

I here cite this statement in the Recommendations to the District Judges, not for the purpose of indicating that in my view the case at bar is one in which the charge of conspiracy is improperly made, for with respect to that matter I have no impressions, but I cite it solely in support of the conclusion that the rules of pleading as well as of evidence in conspiracy cases should be no further relaxed.

While I am not wholly free from doubt as to the validity of the second and third counts, I am rather inclined to think that the objections raised thereto pertain more to the evidence admissible thereunder, or required to be shown in order to sustain the allegations, than to the pleadings themselves.

The demurrer will be sustained as to the first count, and overruled as to the second and third.