## ASGILL et al. v. UNITED STATES.
### No. 3291.

Circuit Court of Appeals, Fourth Circuit. Aug. 8, 1932.

NORTHCOTT, Circuit Judge, dissenting.

M. J. Fulton, of Richmond, Va. (Holmes Hall, of Richmond, Va., on the brief), for appellants.

C. E. Gentry, Sp. Asst. U. S. Atty., of Charlottesville, Va. (Paul W. Kear, U. S. Atty., of Washington, D. C., on the brief), for the United States.

Before PARKER and NORTHCOTT, Circuit Judges, and WATKINS, District Judge.

WATKINS, District Judge.

Appellants, Sarah Asgill and B. J. Hill, were tried and convicted in the United States District Court for the Eastern District of Virginia, in July, 1931, on a charge of conspiracy to defraud the United States; the indictment being brought under section 37 of the Penal Code (18 USCA § 88). Included in the indictment were four others, Alice White Allen, Robert Thomas, Z. Fleming Lyman, and Mary Hill, all of whom were acquitted except Alice White Allen, who entered a plea of guilty. For convenience, appellants will hereinafter be designated as defendants.

The case comes before us upon numerous assignments of error, but, since our decision is based upon the insufficiency of the indictment, the exceptions in other respects need not be passed upon. The indictment purported to contain six counts, the first of which is unnumbered. The last four counts purport only to set out certain overt acts performed in pursuance of and to effect the object of the conspiracy. When the case was called for trial, and before the pleas were entered, defendants, along with certain of their then codefendants, filed a demurrer to the indictment, raising substantially but two objections: (1) Its insufficiency; (2) misjoinder of parties and of separate and distinct unrelated offenses. The last-mentioned objection to the indictment is in such general

terms as to require no consideration. There was made no suggestion of what parties were misjoined or how, nor of what separate and distinct unrelated offenses or causes of action were improperly united. A reading of the indictment discloses the fact that only one crime is charged or attempted to be charged, that of conspiracy to defraud the United States, and that all of the defendants were charged with guilt of that crime, and, therefore, there was no error in overruling the demurrer in this respect.

The charge of insufficiency is more serious. It is admitted by government's counsel that, if the charge of conspiracy is properly laid, it is to be found in the allegations of counts 1 and 2, and that, while these are set out as separate counts, they were meant to be, and should be considered as, but one count, the second a mere continuation of the first. These two counts read, as follows:

"The Grand Jurors of the United States of America empaneled and sworn in the District Court of the United States for the Eastern District of Virginia, Richmond Division, at the April Term thereof in the year 1931, and inquiring for that division and district, upon their oath present: That Robert Thomas of Richmond, Virginia; Reverend B. J. Hill of Petersburg, Virginia; Alice Wyche, alias Alice White, alias Alice White Allen of Petersburg, Virginia; Z. Fleming Lyman of Petersburg, Virginia; Sarah Asgill of Philadelphia, Pennsylvania; and Mary Hill of Petersburg, Virginia; did heretofore, to-wit: During the period between the 2nd day of July, 1928, and the 14th day of May, 1929, in the Eastern District of Virginia and within the jurisdiction of this court, wilfully and feloniously conspire, federate and agree to defraud the United States in the manner following: That is to say, during the year, 1928, and prior thereto, Robert Thomas aforesaid was attorney for the Regional Office of the United States Veterans' Bureau at Richmond, Virginia, and as such attorney was charged with the duty of assisting the offices of the United States Attorneys in the Commonwealth of Virginia in matters involving suits on contracts of War Risk Insurance. In 1924, a suit was filed by Alice Wyche, alias Alice White alias Alice White Allen, one of the defendants herein, in the United States District Court for the Eastern District of Virginia on the War Risk Insurance contract of James Allen, a deceased World War veteran. The said suit was styled 'Alice White Allen v. The United States of America.' The case came on for

trial and a verdict was rendered for the plaintiff against the Government. Judgment was entered February 16, 1929. During the course of the civil case referred to, the said Robert Thomas became acquainted and identified with said Reverend B. J. Hill and Alice Wyche, alias Alice White, alias Alice White Allen, and the other of the said defendants. In satisfaction of the judgment in the civil case referred to the plaintiff therein was, on April 13, 1929, issued a Government check in the sum of Six Thousand Two Hundred Sixty-one ($6,261.75) Dollars and Seventy-five Cents.

### "Count Two.

"And the Grand Jurors aforesaid, upon their oath aforesaid, do further find that the said civil suit above referred to was based and finally adjudicated favorably to the plaintiff therein upon false and fraudulent testimony of Alice Wyche, alias Alice White, alias Alice White Allen, and Sarah Asgill, said false and fraudulent testimony being given by them through their own and through the connivance of, and being aided and abetted by all of said defendants, in that the said civil suit was based upon the allegation that the said Alice Wyche, alias Alice White, alias Alice White Allen, was the common law wife of said James Allen, a deceased World War veteran, and that she lived with the said James Allen in that relationship in the State of New York where common-law marriages were recognized, from May 6, 1913, to October, 1913, thereby bringing her, the said Alice Wyche, alias Alice White, alias Alice White Allen, within the permitted class of beneficiaries under the War Risk Insurance Act, as amended, and under the World War Veterans' Act, as amended, when in truth and in fact as the Grand Jurors find, the said Alice Wyche, alias Alice White, alias Alice White Allen, was not then, nor was she ever the common law wife of the said James Allen, and that the said false and fraudulent testimony was given by the said Alice Wyche, alias Alice White, alias Alice White Allen, and the said Sarah Asgill, both acting for and on behalf of all of said defendants, for the purpose of defrauding the United States Government."

 It is settled by numerous authorities that each count in an indictment is in form a distinct charge of a separate offense, and that valid cumulative terms of imprisonment may be imposed where an accused is convicted of separate and distinct crimes in different indictments or in different counts of the same indictment; and in Dealy v. United States, 152 U. S. 539, at page 542, 14 S. Ct. 680,

681, 38 L. Ed. 545, the court, after stating the rule as above-outlined, says: "Yet, whatever the purpose may be, each count is in form a distinct charge of a separate offense, and hence a verdict of guilty or not guilty as to it is not responsive to the charge in any other count." Notwithstanding the requirement that each count shall be treated as charging a separate offense, it is also an established rule that one count in an indictment may by proper reference incorporate, without repeating, the allegations more fully set out in another count. In such case the reference should be clear, specific, and leave no doubt as to what provisions of another count were intended to be incorporated. Crain v. United States, 162 U. S. 625, 633, 16 S. Ct. 952, 40 L. Ed. 1097, 1099; Blitz v. United States, 153 U. S. 308, 14 S. Ct. 924, 38 L. Ed. 725; Frohwerk v. United States, 249 U. S. 204, 39 S. Ct. 249, 63 L. Ed. 561; Roselle v. Breshears (C. C. A.) 35 F.(2d) 934; 1 Bishop on Criminal Procedure, § 422 and § 431; 1 Chitty's Criminal Law, 250; Wharton's Cr. Pl. & Pr. § 299. Count 1 in the indictment in no way refers to or attempts to incorporate therein any of the allegations of the succeeding counts. Count 2 calls for reference to count 1 in only one particular; that is to say, by referring to "said civil suit above referred to." It does not refer to any conspiracy previously alleged, but sets out certain false and fraudulent testimony given in the suit mentioned, and states that this testimony was given by certain of the defendants through the connivance of, and being aided and abetted by, other defendants for the purpose of defrauding the United States. The writer of this opinion is convinced that the somewhat vague reference in count 2 to the said suit mentioned in count 1 is not sufficient to incorporate into count 2 the general charge of conspiracy contained in count 1, but, in deference to the views of other members of the court, the opinion will not be based upon that ground, but upon the insufficiency of the indictment taken as a whole to constitute a charge of conspiracy.

Counsel for the government makes no contention that the first count, standing alone, is sufficient to constitute a charge of conspiracy. It will be observed that the charge is set out in the most general terms and is also qualified by a statement that the parties conspired in a certain manner, and recites therein the filing of a certain suit against the United States, its prosecution to judgment, and the collection of the sum found to be due. There is no charge that any of these acts were unlawful nor by any sort of infer-

ence that the agreement to do them would be unlawful, nor of any manner in which their accomplishment would tend to defraud the government. There is no attempt either in this count or in count 2 to state what, if any, definite agreement was made, but only the purpose of some undetailed agreement. Count 2 merely details the performance of certain unlawful acts, charges that the suit referred to was based upon and adjudicated favorably because of these acts, and that these acts were done for the purpose of defrauding the government.

Section 1025, Revised Statutes (18 USCA § 556), provides: "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." This statute was enacted for the purpose of preventing miscarriages of justice through the application of all too technical rules of pleading which had grown up under former decisions of the courts. Numerous decisions since its enactment have declared that such practice should no longer be tolerated by the courts. As said by Judge Parker in the case of Hill v. United States (C. C. A.) 42 F.(2d) 812, at page 814: "The time has passed when convictions will be reversed in the courts of the United States for mere technical defects in pleading." We are in full accord with these views and those expressed in the opinion of Judge Rose in the case of Martin v. United States (C. C. A.) 299 F. 287, to the effect that the sufficiency of a criminal pleading should be determined by practical, as distinguished from purely technical, considerations. Decisions that reject technical objections to criminal indictments are not now the exception, and as said in the case of Jelke v. United States (C. C. A.) 255 F. 264, 274, citing numerous authorities: "An overwhelming array of authorities may be found that call for liberal construction of criminal pleadings." The Supreme Court in the recent case of Hagner v. United States, 285 U. S. 427, 52 S. Ct. 417, 419, 76 L. Ed. 861, decided April 11, 1932, says: "The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it con-

784

tains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction,'" and further, referring to the above-quoted section of the Revised Statutes: "This section was enacted to the end that, while the accused must be afforded full protection, the guilty shall not escape through mere imperfections of pleading."

 While given full effect not only to the letter but to the spirit of the statute, it must be read in connection with the Sixth Amendment to the Constitution, which requires that the defendant be informed of the nature and cause of the accusation, this information to be set out through an indictment by the grand jury as guaranteed in the Fifth Amendment. Neither the statute nor the decisions was or were intended to qualify or amend, nor could they qualify, amend, or set aside these provisions of the Constitution. As was well said in the case of State v. Van Pelt, 136 N. C. 633, 49 S. E. 177, 180, 68 L. R. A. 760, 1 Ann. Cas. 495 (a conspiracy case): "No offense is so easily charged and so difficult to be met unless the defendants are fully informed of the facts upon which the state will rely to sustain the indictment. While technical objections to indictments are not to be sustained, substantive and substantial facts should be alleged. General and undefined charges of crime, especially those involving mental conditions and attitudes, should not be encouraged. They are not in harmony with the genius of a free people, living under a written constitution. We can see no good reason why an exception to the general rules of criminal pleading should be made in favor of this crime." The essential and not merely technical requirements of indictments under the guaranties of the Constitution in general and as to conspiracy charges in particular have been outlined in almost countless cases that have reached the Supreme Court and other courts, and there is practical unanimity in these decisions. As stated in Pettibone v. United States, 148 U. S. 197, at page 202, 13 S. Ct. 542, 545, 37 L. Ed. 419: "The general rule in reference to an indictment is that all the material facts and circumstances embraced in the definition of the offense must be stated, and that, if any essential element of the crime is omitted, such omission cannot be supplied by intendment or implication. The charge must be made

directly, and not inferentially, or by way of recital"—citing United States v. Hess, 124 U. S. 483, 486, 8 S. Ct. 571, 31 L. Ed. 516. In the case of United States v. Cruikshank, 92 U. S. 542, 558, 23 L. Ed. 588, after reiterating the constitutional right of the accused to be informed of the nature and cause of the accusation, the court quotes with approval the cases of United States v. Mills, 7 Pet. 142, 8 L. Ed. 636, and United States v. Cook, 17 Wall. 174, 21 L. Ed. 538, to the effect that the indictment must set forth the offense "with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged," and that "every ingredient of which the offense is composed must be accurately and clearly alleged," and that "it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species; it must descend to particulars"—citing 1 Arch. Cr. Pr. and Pl. 291. And for this reason, "facts are to be stated, not conclusions of law alone." In United States v. Robinson et al. (D. C.) 266 F. 240, after citing numerous cases, the court quotes from Bishops New Criminal Procedure, §. 331, to the effect that the facts in allegation must be the primary and individualizing ones. See, also, 3 Foster Fed. Pr. § 497, p. 2633.

 The indictment in the instant case is for violation of a statute. In passing upon the necessary averments in an indictment upon a statute, the Supreme Court in the case of United States v. Carll, 105 U. S. 611, 612, 26 L. Ed. 1135, said: "It is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent." In the case of Pettibone v. United States, supra, it is said that: "A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means," and that, "when the criminality of a conspiracy consists in an unlawful agreement of two or more persons to compass or pro-

mote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment, while if the criminality of the offense consists in the agreement to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means, the means must be set out." In a charge of conspiracy under section 37 of the Penal Code (18 USCA § 88), the offense does not consist of both the conspiracy and of the acts done to effect the object of it, but of the conspiracy alone. While the statute requires that an act be done to effect the object of the conspiracy before the crime is complete, this merely affords a locus penitentiæ by which the parties may abandon their former design and avoid the penalty of the statute. United States v. Britton, 108 U. S. 199, 2 S. Ct. 531, 27 L. Ed. 698. It follows, as was said in that case, that the conspiracy itself must be sufficiently charged, and cannot be aided by averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy. The mere setting forth of the means intended to be used or that were used cannot be taken inferentially to support an indictment for conspiracy unless and until the essential elements of the unlawful agreement and purpose have been fully and clearly set forth. At common law it was necessary neither to aver nor prove an overt act. Bannon v. United States, 156 U. S. 464, 15 S. Ct. 467, 39 L. Ed. 494. The essentials of a conspiracy under the statute are the same as at common law. The allegation of overt acts forms no part of the substantive charge. It merely reads into the indictment an essential condition which must be proved in order to complete the crime. That the averment of the acts done by one or more conspirators in furtherance of the object of the conspiracy cannot be taken in aid of averment of the charge of the conspiracy itself, see, also, United States v. Beiner (D. C.) 275 F. 704; 2 Wharton's Criminal Law, p. 1774, § 1622; United States v. Eisenminger (D. C.) 16 F.(2d) 816.

The basis of a conspiracy is the unity of design and purpose; it is what has been agreed to and not what has been done, and so it has been held that several persons may, simultaneously, actually do, without incurring liability to punishment, that which, if it were the object of a preconcerted design, would render the participants liable to indictment for conspiracy; nor will evidence that each of several defendants acted illegally or maliciously with the same end in view support a charge of conspiracy, unless it appears that such acts were done pursuant to a mutual agreement. 12 C. J. p. 543 (§ 5) 2. See, also, 12 C. J. pp. 614, 615, and 616. It is true, as held in many cases, that the proof of the terms of the conspiracy may be supported by proof of what was done. The nature of the crime itself is such as to render it almost impossible to establish the agreement by direct proof of the discussion between the parties in reaching their agreement. When the charge is laid, however, the terms of the agreement must be set forth therein, and, until this is done, evidence of the conduct of the parties cannot be held to be competent or responsive to the unalleged agreement.

Reversed.

NORTHCOTT, Circuit Judge (dissenting).

I am of the opinion that under section 1025, R. S. U. S. (USCA, title 18, § 556), and the cases of Hagner v. U. S. supra, Martin v. U. S. supra, and Hill v. U. S., supra, all cited in the opinion of the majority, the indictment in this case is sufficient.