## UNITED STATES v. DIRECT SALES CO., Inc., et al.

### No. 8460.

District Court, W. D. South Carolina.

Sept. 19, 1941.

Oscar H. Doyle, U. S. Atty., and E. P. Riley and Thomas A. Wofford, Asst. U. S. Attys., all of Greenville, S. C., for United States.

William B. Mahoney, of Buffalo, N. Y., for defendant Direct Sales Co., Inc.

WYCHE, District Judge.

To the indictment in this cause the defendant, Direct Sales Company, has filed a plea in abatement and a demurrer.

Stated briefly, the basis of the plea in abatement is that there was not sufficient evidence before the grand jury upon which to predicate the finding of a true bill. Various evidentiary facts are alleged affirmatively by this defendant, and it is stated upon information and belief that these facts were not called to the attention of the grand jury. These evidentiary facts may or may not be relevant upon a trial of the case. The questions for consideration, therefore, are (1) Does the Court have the right to inquire into the proceedings of the grand jury in order to determine the sufficiency or insufficiency of the testimony upon which a true bill was found; and, (2) Assuming such right exists, are the allegations and proof submitted with the plea sufficient to justify the Court in its discretion to inquire into the proceedings? There are no allegations of irregularity or fraud. The prayer of the plea is that this defendant may be dismissed from the indictment " * * * and that the Court may be fully satisfied of the truth of the matters, facts and allegations above set forth, in case of the denial of same and in furtherance of justice an investigation of the minutes of the Grand Jurors which returned the said indictment be had by the Court and by the attorney for this defendant and that the United States District Attorney or his assistant in charge of the presentation of said cause to the said Grand Jury of May, 1941, term of this Court and the Grand Jurors themselves be summoned before this Court and be interrogated by the attorneys and counsel for this defendant as to the testimony adduced before them in this case."

The decisions on the questions presented are not at all uniform, but by far the greater weight of the authorities is to the effect that the Courts have no right to grant such relief as the defendant prays for.

There is no federal statute regulating proceedings before a grand jury or specifying the kind and degree of evidence necessary to the finding of a true bill. Nor is there a statute of the State of South Carolina on the subject. A number of the states do have such statutes, and the variations of their requirements have given rise to a divergence of opinion on the questions now before the Court. In the jurisdictions which are opposed to an inquiry into the sufficiency of the evidence on which an indictment is based, the reasons are mainly that the secrecy of the grand jury proceedings will not be invaded, and that statutes prescribing the grounds on which motions to quash may be made not mentioning insufficiency of the evidence is conclusive that such ground is not a valid one. In the absence of a statute on the subject the Common Law Rule will prevail, and that is the rule followed by the Supreme Court of the State of South Carolina in State v. Boyd, 2 Hill, Law 288, 27 Am.Dec. 376. Defendant in that case moved to quash the indictment on the ground, among others, that written statements of witnesses were received in evidence, when they should have been examined in person. The Presiding Judge refused the motion and an appeal was taken. Justice Harper, speaking for the Court, said: "With respect to the second ground, I am of opinion that the Court will, in no instance, inquire into the character of the testimony which has influenced the grand jury in finding an indictment, with a view to quashing of the indictment." And again the Court said: "The nature of the grand juror's oath sufficiently indicates that they are not to communicate to others that which passes among the jurymen in their consultation, and I think the juror who made the affidavit in the present instance was guilty of a violation of duty."

In State v. Rector, 158 S.C. 212, 155 S.E. 385, 390, the Supreme Court of South Carolina said: "As long as the grand jury has been known to our judicial system, and that body came with the organization of our first courts, their acts and proceedings have been regarded almost sacredly secret." And again, "From the pronouncements of the given authorities, it is plain that the general rule observed in all jurisdictions, to which there is no exception, except where made by proper legislation, forbids any inquiry into the

920

proceedings of a grand jury. Our decisions show that our courts have adhered strictly to that rule. No one, not even the presiding judge, may invade the secrecy of the grand jury's deliberations, to inquire what influenced them in their acts, or to ascertain how any member may have voted."

■ A grand jury is an informing and accusing body rather than a trial body. Its duty is to inquire and investigate. It is not the function of a grand jury to determine the guilt or the innocence of a person accused of crime. That is the duty imposed upon the petit jury. In order to find a true bill it is necessary only that the grand jury determine from the evidence that the person charged is probably guilty. Its duty is to decide from the evidence offered whether there is prima facie ground for criminal prosecution. State v. Bramlett, 166 S.C. 323, 164 S.E. 873.

■ There is an extensive note on the question under consideration in 31 A.L.R. beginning at page 1479. There many decisions from various jurisdictions have been collected, and it appears that the overwhelming majority rule is to the effect that the courts may not inquire into the legality or sufficiency of the evidence on which an indictment is based, the rule going so far in a great many jurisdictions as to hold that such inquiry may not be made even though it is averred that the indictment was found without any legal evidence being produced before the grand jury. It would also seem that the minority rule permits an inquiry into the proceedings of the grand jury only when it appears that the indictment was found without the production of any legal evidence, and in the jurisdictions so holding, the decisions turn largely upon the state statutes prescribing the kind and degree of evidence upon which a grand jury may act. There is another rule, known as "Rule in New York". It appears that the courts of the State of New York, while in the main following the minority rule, go further than those of any other jurisdiction in weighing the evidence produced before the grand jury, but even that rule does not sanction the relief prayed for in the instant motion. In People v. Steinhardt, 47 Misc. 252, 93 N.Y.S. 1026, 1031, the Court said: "I take it, then, that the inherent power of the court to set aside indictments is limited to cases where the indictment is found without evidence, or wholly upon illegal and incompetent testimony, and to cases where the indictment is based in part upon the testimony of the defendant, compelled to be a witness in violation of his constitutional right."

The reasons for the majority rule are very well stated in the case of State of New Mexico v. Chance, 29 N.M. 34, 221 P. 183, 184, reported also in 31 A.L.R. 1466: "The proceedings of the grand jury throughout legal history have always been secret. It is a judicial tribunal with inquisitorial powers, and, unless there is some clear statutory authority to do so, we think the courts are without power to review its action to determine whether or not it had sufficient or insufficient, legal or illegal, competent or incompetent evidence upon which to return an indictment. To hold otherwise would permit every person who is indicted to present a plea in abatement, charging that no evidence had been submitted to or received by the grand jury, upon which such indictment could have been, or was in fact, returned, and then, upon a hearing had upon such plea, introduce the witnesses who appeared before such grand jury and ascertain the facts which were submitted to the grand jury and to which they would likely testify upon the trial, thereby ascertaining the evidence available to the state to which the accused would be called upon to respond, thus injecting into our judicial system a new and highly objectionable procedure."

In United States v. Swift, D,C.Ill., 186 F. 1002, 1018, the court said: "The cases are uniform to the effect that, except in those states in which, by statute, indictments are required to be returned on 'legal' or 'competent' evidence, the courts will not review the evidence received by a grand jury for the purpose of passing upon its competency. In the first place, no official record of the evidence introduced before the grand jury ordinarily is kept. In the second place, if, on a motion to quash, the competency of the evidence presented could be inquired into, the trial courts would be obliged to sit as courts of review, to examine into the correctness of every ruling made upon the evidence by the grand jurors. The obstructions to justice and the unnecessary and uncalled-for waste of time, and consequent expense to the state as well as to defendants, which would result from such a course, are too obvious to need comment."

The rule in the State of New York being far more favorable to the position of

the defendant than the rule in any other jurisdiction, the following is quoted from United States v. Gouled, D.C.N.Y., 253 F. 242, 244, to show that even the liberality of that rule does not permit the relief prayed for in this case upon the allegations of the plea made: "While I have no difficulty in declaring that in extreme cases of positive allegations of fraud or corruption, or positive allegations that no evidence of any kind had been admitted, and therefore the indictment was the result of caprice, and not the expression of a fair judgment on the facts, it would not only be proper, but incumbent upon the court, to examine the grand jury minutes, so as to protect the citizen from oppression, I think the policy of the law is unalterably opposed to fishing expeditions into grand jury minutes, conducted by the court at the request of defendants on affidavits upon information and belief, and there is no reason shown in this case why such an expedition should be entered on."

The following quotation from United States v. Cobban, C.C., 127 F. 713, 718, is very pertinent to the question before the Court. Pleas in abatement were interposed in this case on the ground, among others, that the testimony was insufficient: "Clearly, this involves an investigation of the testimony produced before the jury, and a determination of its relevancy and sufficiency. If it be admitted that any of the testimony can be reproduced, then it all must be, if the defendant demands it, for there is no possible place in principle to draw the line between that which shall and that which shall not be received. We thus have the spectacle of the court sitting as one of error and review upon the case as heard before the grand jury, and this upon the sole demand of the defendant. I confess this is contrary to all my conceptions of the practice, and, if established, must lead to a miscarriage of justice. All that secrecy of investigation which for ages has been associated with the grand jury system, and which has been deemed an efficient means of its successful operation, is swept away, and all its proceedings must be made, if the defendant so wills, as public as those of a town meeting. A more serious objection is that a defendant may thus learn what testimony exists against him, and be prepared to overcome it upon the trial by perjury. It is idle to moralize that we cannot presume that perjury will be invoked in behalf of the guilty, for we know that it often is. To establish this

rule of inquiry, and carry it to its legitimate conclusion, would, in my opinion, result in a shield to crime, for which, it must be admitted, there are already many avenues of escape. * * *

"In United States v. Reed, 27 Fed.Cas. 727 [No. 16,134], 2 Blatchf. 435, there was a motion to quash the indictment for, among other reasons, the insufficiency of the evidence. Says Mr. Justice Nelson in that case: 'No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence for the purpose of determining whether or not the finding was founded upon sufficient proof;' and, further, that it was contrary to the policy of the law to try the question whether the grand jury had sufficient or any evidence to warrant their finding. This case is important because by a justice of the Supreme Court, and its ruling is clear and explicit. To the same effect is United States v. Brown, Fed.Cas.No.14,671, 1 Sawy. [531], 533, and United States v. Terry (D.C.), 39 F. 355."

The weight of authority is opposed to inquiry into proceedings before a grand jury when such proceedings on their face are regular, and the question of the sufficiency or insufficiency, competency or incompetency of the testimony adduced before the grand jury is a matter which the Court has no right to inquire into. The reasons for the rule are sound, and to hold otherwise would lead to endless confusion.

■ However, assuming that I could grant the prayer of the plea, there would be no justification for it in this case. No allegation of fraud or irregularity is made; no proof of the allegations of the plea is tendered in any form by affidavit or otherwise, except the sworn verification of the president of the defendant company, and this is not sufficient. He states the things alleged upon information and belief. The source of his information is not stated, nor the reason for his belief. Testimony before the grand jury was not reported, and there is no way by which the defendant can possibly know what evidence was or was not produced at the inquiry. The plea in abatement cannot be sustained.

■ The defendant Direct Sales Company demurs to the indictment on the following grounds: First, that the said indictment does not state facts sufficient to constitute a crime against the United States by the defendant, Direct Sales Com-

pany; second, that the indictment insofar as the defendant Direct Sales Company is concerned is in conflict with the fifth and sixth amendments to the Constitution of the United States being too indefinite and a delegation by Congress of legislative powers to Court and juries to determine what acts are criminal. The indictment charges a crime against the United States in the following language: " * * * did unlawfully, wilfully, and knowingly combine, conspire, confederate, and agree together that they would defraud the United States out of its revenues as provided by the terms of said Act, as amended, and that they would commit offenses against the United States of America by violating the provisions of Sections 1 and 2 thereof; that is to say, they would obtain large quantities of morphine sulphate by use of official order forms prescribed by the said Act, for purposes other than in the conduct of a lawful business in said drugs, or in the legitimate practice of medicine, and that they would sell, barter, exchange and give away said drugs, so obtained, without having registered in a classification under said Act permitting them so to do, and without having paid the special tax required, and that they would sell, barter, exchange and give away said drugs not in or from the original tax stamped packages, and not in pursuance of written order forms from the persons to whom sold, bartered, exchanged and given, and said unlawful purposes were to be accomplished in the following manner, to wit: * * *" The things which the indictment alleges the defendant agreed to do are unlawful. The basis of conspiracy is the agreement, and cases cited by the defendant are pertinent to this point but the rule is better stated in Asgill v. United States, 4 Cir., 60 F.2d 780, 785, where the Court said: "The basis of a conspiracy is the unity of design and purpose; it is what has been agreed to and not what has been done, and so it has been held that several persons may, simultaneously, actually do, without incurring liability to punishment, that which, if it were the object of a preconcerted design, would render the participants liable to indictment for conspiracy; nor will the evidence that each of several defendants acted illegally or maliciously with the same end in view support a charge of conspiracy, unless it appears that such acts were done pursuant to a mutual agreement."

■ This indictment is in the language of the conspiracy statute. It al-leges an agreement to do certain things prohibited by the Harrison Narcotic Act, 26 U.S.C.A. Int.Rev.Code, §§ 2550 et seq., 3220 et seq., and it further sets forth the manner in which the Act was intended to be violated. It meets the requirements of the rule as given in Hill v. United States, 4 Cir., 42 F.2d 812, 814: "When it charges in the words of the conspiracy statute a conspiracy to violate a criminal statute of the United States and contains a sufficient description of the object of the conspiracy to fairly and reasonably inform the accused of the character of the offense charged, it is sufficient."

And in Martin v. United States, 4 Cir., 299 F. 287, 288, the Court said: "The sufficiency of a criminal pleading should be determined by practical, as distinguished from purely technical, considerations. Does it, under all the circumstances of the case, tell the defendant all that he needs to know for his defense, and does it so specify that with which he is charged that he will be in no danger of being a second time put in jeopardy? If so, it should be held good."

Under the terms of the Harrison Narcotic Act it is unlawful, among other things, (1) to sell, dispense or distribute the prohibited drugs except in or from the original stamped package; (2) for a physician to sell, distribute or dispense not in the course of his professional practice or for legitimate medical purposes; (3) to sell, barter, exchange or give away any of said drugs except in pursuance of a written order to the person to whom sold, etc., on a form issued in blank for that purpose by the Commissioner of Internal Revenue; (4) to the sale, dispensing or distribution of said drugs by a dealer to a consumer, not in pursuance of a written prescription issued by a physician registered under the Act; (5) for any person to obtain by means of order forms any of said drugs for any purpose other than the use, sale and distribution by him in the conduct of a lawful business in said drugs or the legitimate practice of medicine. All of these provisions are alleged to have been violated, or intended to be violated, by some one or more of the defendants, pursuant to agreement between all of them.

■ The indictment specifically alleges that the defendant, Dr. John Victor Tate, obtained said drugs from the defendant, Direct Sales Company, by use of his official order forms, for a purpose other

than the use, sale and distribution by him in the conduct of a lawful business or in the legitimate practice of his profession, and that the defendant, Direct Sales Company, induced him to do so and made such sales knowing the purpose for which they were being obtained. Defendant contends that an allegation that the defendant, Direct Sales Company, sold the drugs "knowing" the purpose for which they were purchased is not enough to save the indictment, and cites United States v. Kerper, D.C., 29 F.2d 744, and United States v. Russell, D.C., 41 F.2d 852. These cases reiterate a well established principle of law, that is, that mere knowledge of one that another contemplates violation of the law would not make them coconspirators. Something more is necessary, and that is the agreement and unity of design and these elements the indictment alleges. In my view of the expression "then and there well knowing", etc., in the indictment adds nothing to its sufficiency and may be regarded as surplusage. If there was an agreement, then the defendants had knowledge of the facts. If there was no agreement, then there was no conspiracy. The indictment alleges an agreement and an active participation by Direct Sales Company pursuant to it. This is the sort of knowledge and participation which the Court condemned in the case of United States v. Wilson, D.C., 59 F.2d 97, 98, "Where a defendant has knowledge that another is promoting a violation of the prohibition law, and in need of materials for furthering the enterprise, and such defendant, with such knowledge, furnishes the necessary materials for the purpose of forwarding the unlawful purpose, making it possible to accomplish the unlawful act, he is guilty." See, also, Pattis v. United States, 9 Cir., 17 F.2d 562.

In Doremus v. United States, 5 Cir., 262 F. 849, 13 A.L.R. 853, it was held that a physician issuing a prescription which he knew was not in good faith, aided and abetted an unlawful sale by a druggist who knew the facts. To the same effect is Webb v. United States, 249 U.S. 96, 39 S. Ct. 217, 63 L.Ed. 497; Terry v. United States, 4 Cir., 51 F.2d 49; Costal v. United States, 6 Cir., 13 F.2d 843.

Whether or not the testimony at a trial will support the allegations that there was an agreement between the parties and active cooperation between them, remains to be seen, but such allegations are sufficient to sustain the indictment.

The first ground of the demurrer therefore cannot be sustained.

Defendant contends that as to it the indictment is in conflict with the Fifth and Sixth Amendments to the Constitution of the United States, and in its brief states its reasons as follows: " * * * defendant states that its claim as to a violation of the Fifth and Sixth Amendments is based on the proposition that Congress did not deem it necessary to place a limitation or ceiling upon the amount of opium, or its derivatives that may be dispensed by a duly licensed wholesaler or dealer to a duly licensed physician pursuant to an order form issued by the Collector of Internal Revenue. That under this indictment, the defendant is not adequately informed of the nature and cause of accusation against it because it is left to the discretion of the Court and jury to determine what amount may be dispensed by the licensees. That such a construction would result in a delegation by Congress to Courts and juries of its powers to define crime and it is therefore repugnant to the Constitution and its Fifth and Sixth Amendments."

There is no doubt but that the power to define crime rests solely with the Congress, and that such power cannot be delegated. The Harrison Narcotic Act, however, specifically makes the doing of many acts, some of which have already been enumerated herein, unlawful and the Supreme Court of the United States has held the Act to be constitutional as a revenue measure. Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214; Doremus v. United States, supra. It is true that Congress has placed no limit on the amount of drugs which a physician may prescribe or which a retail or wholesale licensee may sell. It may be conceded that such an attempt would meet with constitutional difficulties. It is unlawful, however, for any person, a physician included, to obtain the drugs by use of official order forms for any purpose other than a legitimate one, and the amount obtained, whether great or small, makes no difference. A retail dealer in narcotic drugs may sell to a consumer on the prescription of a physician. It is so provided by the Act. Yet the Courts have held time and again that a physician's prescription, when not issued in good faith "is not a prescription", and will protect neither the physician who issued it nor the retail licensee who knowingly accepts and fills it.

924

Webb v. United States, supra. An order form has no greater validity or dignity under the Act than a prescription. If the latter when not issued in good faith for a lawful purpose will not protect the physician or the retailer, why should an order form issued to obtain the drugs for other than a lawful purpose protect the physician issuing it or the wholesaler who sells pursuant to it, knowing the facts? On principle there would seem to be no sound reason under the same circumstances to hold the one void and of no protection to the parties to it and to hold the other valid and of absolute protection.

No attempt is made to have the Court determine how much of the drugs may be sold to a licensee. It is simply alleged that this defendant, along with other defendants, agreed to do certain unlawful things and that certain of them committed overt acts in pursuance thereof. The indictment need not set forth all of the evidence by which the government proposes to prove the agreement, but I have no right to assume that such evidence does not exist. The defendant is held to answer on the presentment of a grand jury as provided by the Fifth Amendment of the Constitution and is sufficiently informed of the nature and cause of the accusation as provided by the Sixth Amendment. The second ground of the demurrer cannot be sustained.

For the foregoing reasons the plea in abatement and the demurrer should be overruled.