## DIRECT SALES CO., Inc., v. UNITED STATES.

### No. 4956.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1942.

William B. Mahoney, of Buffalo, N. Y., for appellant.

Oscar H. Doyle, U. S. Atty., of Anderson, S. C. (Edward P. Riley, Assistant U. S. Atty., of Greenville, S. C., on the brief), for appellee.

Before PARKER, DOBIE and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

Appellant, Direct Sales Company, Inc., with four others, was indicted in the District Court of the United States for the Western District of South Carolina charged with the crime of conspiring to violate the Harrison Narcotic Act, 26 U.S.C.A. Int. Rev.Code §§ 2550 et seq., 3220 et seq. (Section 37, Criminal Code, 18 U.S.C.A. § 88). A plea in abatement and demurrer were interposed by the appellant and after argument the plea in abatement was denied and the demurrer overruled. 40 F.Supp. 917.

Two of those indicted pleaded guilty and a severance was granted as to another of the defendants. In November 1941 a trial was had at Greenwood, South Carolina, before a jury as to the appellant and the other defendant.

At the conclusion of the Government's evidence a motion was made on behalf of the appellant for a directed verdict and decision on the motion was reserved by the trial judge. This motion was renewed at the close of the entire case and was denied with exception to the appellant.

The jury returned a verdict of guilty as to the appellant and one Dr. John V. Tate. Motions to set aside the verdict and in arrest of judgment were made on behalf of the appellant. These motions were denied by the judge below who rendered an able and exhaustive opinion. 44 F.Supp. 623. Judgment was pronounced fining the appellant the sum of $1,000. From this action this appeal was brought.

Direct Sales Company is a corporation, having its principal place of business at Buffalo, New York, and is a manufacturer

of and a wholesale dealer in drugs, including narcotics, and at the times mentioned in the indictment was registered as such under the provisions of the Harrison Narcotic Act. Dr. John Victor Tate is a physician residing at Calhoun Falls, South Carolina, and was, at the times mentioned in the indictment, registered under provisions of the Act in his proper class. The defendant Johnson was a resident of Augusta, Georgia, and defendants Foster and Black were residents of Spartanburg, South Carolina. Neither of them had been registered or had paid the special tax in any class under the provisions of the Act.

The Direct Sales Company, as its name implies, sells directly to the customer. It has no travelling representatives. It solicited the business of Dr. Tate by means of catalogs and circulars sent to him every ten days. The catalog used by this defendant is an ordinary pamphlet printed in black type on white paper, and a great number of preparations are listed in it. Narcotics, however, are not listed in the catalog itself. This defendant's uniform practice, during the period alleged in the indictment, was to insert into the catalogs a sheet of paper approximately four inches wide by five and one-half inches long, sometimes colored pink and sometimes blue, on which was listed morphine sulphate. It offered tablets of morphine sulphate for sale in lots of five hundred, one thousand and five thousand one-quarter and one-half grain tablets. The prices were from thirty to forty per cent less than could be obtained elsewhere.

The evidence disclosed that from the month of December 1937 to the month of January 1940 the appellant shipped to Dr. Tate the enormous quantity of 79,000 one-half grain morphine sulphate tablets. As many as 6,000 one-half grain tablets were shipped by the appellant to Dr. Tate in the one month of July 1939.

The evidence of the Government's witnesses was that one-fourth grain was the usual dose given by doctors to their patients and that one-half grain was usually used by addicts.

It seems too clear for argument that Dr. Tate could not possibly have used anything like the quantity of morphine, shipped him by the appellant, in his legitimate practice as a doctor in a small town. The only way Dr. Tate could lawfully dispose of the morphine was to administer it to his patients, as he could not legally sell it or give it away.

That he could legitimately use 6,000 one-half grain tablets or 12,000 normal doses in one month was inconceivable. To use that amount legitimately he would have had to give 400 doses every day to his patients.

Knowing, as its officers must have known, in conducting its business as a dealer in drugs, that Dr. Tate was disposing of the drug in violation of the law they continued the large shipments of the morphine to him and thereby became a party to his illegal acts. This undoubtedly amounted to an unlawful conspiracy as charged in the indictment. Not only did the company continue these shipments knowing they could be used for no lawful purpose but it repeatedly and regularly solicited from Dr. Tate his orders.

This case appears to be unique in that the indictment charges a conspiracy to violate the Harrison Act between a wholesale dealer in drugs and a practicing physician. Appellant must have known that Dr. Tate lived and practiced his profession in a small town. It is worthy of note, too, that on one of the lists of doctors who had been convicted of violating the Harrison Act (furnished by the United States to dealers in narcotic drugs), more than one-quarter of the doctors listed were customers of appellant. Then there is the further fact that appellant had agreed with federal officers not to make a single sale of more than a specified quantity of narcotic drugs; yet, when Dr. Tate sent in one order for more than the agreed quantity, appellant shipped this maximum quantity and merely asked Dr. Tate to make out a new form for the excess. This was a clear violation of the spirit of the agreement. Under these facts, the instant case is clearly distinguishable from United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128.

An unlawful agreement need not be shown to exist in any formal way. It is a rare thing that an unlawful agreement can be so shown. A mutual understanding between the parties or any two or more of them is all that is necessary to prove conspiracy. United States v. Wilson, D.C. W.Va., 23 F.2d 112; Fisher v. United States, 4 Cir., 13 F.2d 756.

An exhaustive analysis of the authorities is found in the opinion of the judge below denying the motion for a new trial and we agree fully with his

reasoning and his conclusion that the evidence was sufficient to support the verdict of the jury.

There is no merit in any of the points raised by the appellant as to the admission of evidence or the charge of the judge to the jury and they are not worthy of discussion.

Affirmed.