## WEBB ET AL. *v.* UNITED STATES.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 370. Argued January 16, 1919.—Decided March 3, 1919.

The first sentence of § 2 of the Narcotic Drug Act of December 17, 1914, c. 1, 38 Stat. 785, prohibits retail sales of morphine by druggists to persons who have no physician's prescription, who have no order blank therefor and who cannot obtain an order blank because not of the class to which such blanks are allowed to be issued under the act. P. 99.

This construction does not make unconstitutional the prohibition of such sale. *Id. United States* v. *Doremus, ante,* 86.

If a practicing and registered physician issues an order for morphine to an habitual user thereof, the order not being issued by him in the course of professional treatment in the attempted cure of the habit, but for the purpose of providing the user with morphine sufficient to keep him comfortable by maintaining his customary use, such order is not a physician's prescription under exception (b) of § 2 of the act. *Id.*

THE case is stated in the opinion.

*Mr. Ralph Davis,* with whom *Mr. Ike W. Crabtree* was on the brief, for Webb *et al.,* defendants, contended that a druggist, who has paid the tax and registered under the act and obtained the drug by use of the required form, has a right to sell directly to the consumer, and that the part of the act making it unlawful to do so without a physician's prescription is beyond the power of Congress, and an invasion of the police power of the States, citing: *Beer Co.* v. *Massachusetts,* 97 U. S. 25; *Meffert* v. *Packer,* 195 U. S. 625; *United States* v. *Jin Fuey Moy,* 241 U. S. 394; *In re Kollock,* 165 U. S. 526; *Blunt* v. *United States,* 255 Fed. Rep. 332; *Mugler* v. *Kansas,* 123 U. S. 623, 661.

*Mr. Assistant Attorney General Porter,* with whom *Mr. W. C. Herron* was on the brief, for the United States.

*Mr. Frans E. Lindquist,* by leave of court, filed a brief as *amicus curiæ.*

Mr. Justice Day delivered the opinion of the court.

This case involves the provisions of the Harrison Narcotic Drug Act, considered in No. 367, just decided, *ante,* 86. The case comes here upon a certificate from the Circuit Court of Appeals for the Sixth Circuit. From the certificate it appears that Webb and Goldbaum were convicted and sentenced in the District Court of the United States for the Western District of Tennessee on a charge of conspiracy (§ 37, Penal Code) to violate the Harrison Narcotic Law. 38 Stat. 785; 6 U. S. Comp. Stats. 1916, § 6287g. While the certificate states that the indictment is inartificial, it is certified to be sufficient to support a prosecution upon the theory that Webb and Goldbaum intended to have the latter violate the law by using the order blanks (§ 1 of the act) for a prohibited purpose.

The certificate states: "If § 2, rightly construed, forbids sales to a non-registrable user, and if such prohibition is constitutional, we next meet the question whether such orders as Webb gave to applicants are 'prescriptions,' within the meaning of exception (b) in § 2.

"We conclude that the case cannot be disposed of without determining the construction and perhaps the constitutionality of the law in certain particulars, and for the purpose of certification, we state the facts as follows,— assuming, as for this purpose we must do, that whatever the evidence tended to show in aid of the prosecution, must be taken as a fact:

"Webb was a practicing physician and Goldbaum a retail druggist, in Memphis. It was Webb's regular cus-

tom and practice to prescribe morphine for habitual users upon their application to him therefor. He furnished these 'prescriptions,' not after consideration of the applicant's individual case, and in such quantities and with such direction as, in his judgment, would tend to cure the habit or as might be necessary or helpful in an attempt to break the habit, but without such consideration and rather in such quantities as the applicant desired for the sake of continuing his accustomed use. Goldbaum was familiar with such practice and habitually filled such prescriptions. Webb had duly registered and paid the special tax as required by § 1 of the act. Goldbaum had also registered and paid such tax and kept all records required by the law. Goldbaum had been provided with the blank forms contemplated by § 2 of the act for use in ordering morphine, and, by the use of such blank order forms, had obtained from the wholesalers, in Memphis, a stock of morphine. It had been agreed and understood between Webb and Goldbaum that Goldbaum should, by using such order forms, procure a stock of morphine, which morphine he should and would sell to those who desired to purchase and who came provided with Webb's so-called prescriptions. It was the intent of Webb and Goldbaum that morphine should thus be furnished to the habitual users thereof by Goldbaum and without any physician's prescription issued in the course of a good faith attempt to cure the morphine habit. In order that these facts may have their true color, it should also be stated that within a period of eleven months Goldbaum purchased from wholesalers in Memphis, thirty times as much morphine as was bought by the average retail druggist doing a larger general business, and he sold narcotic drugs in 6,500 instances; that Webb regularly charged fifty cents for each so-called prescription, and within this period had furnished, and Goldbaum had filled, over 4,000 such prescriptions; and that one Rabens, a user of the

drug, came from another state and applied to Webb for morphine and was given at one time ten so-called prescriptions for one drachm each, which prescriptions were filled at one time by Goldbaum upon Rabens' presentation, although each was made out in a separate and fictitious name."

Upon these facts the Circuit Court of Appeals propounds to this court three questions:

"1. Does the first sentence of § 2 of the Harrison Act prohibit retail sales of morphine by druggists to persons who have no physician's prescription, who have no order blank therefor and who cannot obtain an order blank because not of the class to which such blanks are allowed to be issued?

"2. If the answer to question one is in the affirmative, does this construction make unconstitutional the prohibition of such sale?

"3. If a practicing and registered physician issues an order for morphine to an habitual user thereof, the order not being issued by him in the course of professional treatment in the attempted cure of the habit, but being issued for the purpose of providing the user with morphine sufficient to keep him comfortable by maintaining his customary use, is such order a physician's prescription under exception (b) of § 2?

"If question one is answered in the negative, or question two in the affirmative, no answer to question three will be necessary; and if question three is answered in the affirmative, questions one and two become immaterial."

What we have said of the construction and purpose of the act in No. 367 plainly requires that question one should be answered in the affirmative. Question two should be answered in the negative for the reasons stated in the opinion in No. 367. As to question three—to call such an order for the use of morphine a physician's prescription would be so plain a perversion of meaning that

no discussion of the subject is required. That question should· be answered in the negative.

*Answers directed accordingly.*

For the reasons which prevented him from assenting in No. 367, THE CHIEF JUSTICE also dissents in this case.

MR. JUSTICE McKENNA, MR. JUSTICE VAN DEVANTER and MR. JUSTICE McREYNOLDS concur in the dissent.