### BARBOT v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1921.)

No. 1838.

**Poisons ⚖═4—Defrauding revenue not essential to conviction for violation of Narcotic Act.**

In the prosecution of a physician for prescribing or dispensing drugs in violation of Harrison Narcotic Act § 2 (Comp. St. § 6287h), it is not a defense that his acts were not intended, and did not tend, to violate or defeat the revenue provisions of the act but the only issue is whether he acted in good faith in prescribing drugs to patients for maladies requiring administration of the drug, or whether he dispensed or prescribed them generally to persons seeking his professional aid merely to procure the drugs.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Criminal prosecution by the United States against Louis D. Barbot. Judgment of conviction, and defendant brings error. Affirmed.

John P. Grace, of Charleston, S. C., for plaintiff in error.

J. Waties Waring, Asst. U. S. Atty., of Charleston, S. C. (Francis H. Weston, U. S. Atty., of Columbia, S. C., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. Louis D. Barbot, the plaintiff in error, hereinafter called the defendant, is and was a physician, and prior to the commission of the offense of which he stands indicted had long practiced his profession in the city of Charleston. He was for some years professor of anatomy at the South Carolina Medical College, of high standing in the community, a member of the leading medical societies, accomplished in his profession, and enjoyed a large practice. On the 2d of December, 1919, he was indicted by the grand jury of the United States District Court at Columbia, charged with the violation of the Harrison Anti-Narcotic Drug Act of the 17th of December, 1914 (38 Stat. 786; Comp. St. §§ 6287g–6287q). The indictment contained 16 counts. The first 2 related to failure to keep proper records as a licensed physician under that act, and the remaining 14 covered sales of morphine and cocaine to divers persons named in the several counts, not in the course of his professional practice. Upon his trial, the jury

returned a verdict of not guilty as to the first 2 counts, and guilty on the remaining 14 counts. Judgment was entered, and the defendant fined and imprisoned under the said 14 counts on which he was convicted, from which action of the court this writ of error was sued out.

Three assignments of error were made—the first relating to the admission of testimony on the trial; the second, to the charge of the court interpreting the Harrison Act; and the third, to the portion of the court's charge relating to the same subject. At the hearing, and in the defendant's briefs, the second assignment alone was relied upon as ground for reversal of the lower court's action. Defendant excepted to the refusal to charge that—

"The jury are instructed that the primary object of this law is not a police one; it is a revenue law; it is only secondarily a police measure; it could not be maintained as constitutional, if it were regarded as primarily a police measure. The jury are instructed that they must find that the defendant had an intention to violate, or that his conduct reasonably would lead to the violation of the revenue object of the law, in order to find him guilty."

The facts in the case—that is to say, that the defendant prescribed, sold, and distributed drugs and narcotics as charged in the indictment, in large quantities—are not in dispute. Indeed, the defendant insists upon his right, as a licensed physician, so to do, and that he was acting from a humanitarian standpoint, and that, in so far as it inhibited him from so doing, the act was in contravention of his constitutional rights. The extent of the defendant's business is worthy of mention. It appears from his own records that from July 1, 1918, to October 16, 1919, he purchased 92,950 one-quarter grain tablets of morphine, 200 one-half grain morphine tablets, 329 drachms of powdered morphine, and 10 drachms of cocaine; and further that for a considerable time the defendant was the chief source from which narcotic drugs were obtained in Charleston, and his own record disclosed that most of the habitual users of drugs were in almost daily attendance upon him, and that the dosages furnished them, if, indeed, that feature is at all material, were not given in decreasing quantities, but frequently in larger and sometimes steadily increasing doses; and by his own handwriting it was shown that he was accustomed to give some addicts as much as a drachm of cocaine or morphine at one time, and to others he furnished 500 and 600 quarter grain morphine tablets at one time.

A number of local physicians were called, who testified as to the method of treatment of drug addicts, and physicians from Charleston, Columbia, and New York, called as experts, were in accord that the defendant's manner of furnishing morphine and cocaine did not constitute treatment of a drug addict, such as would cure him. The government's testimony established that the defendant's method of treatment was not a bona fide attempt to cure patients afflicted by the drug habit, but merely a way of selling and dispensing to them such drugs as they wanted. It seems quite manifest from the testimony that the defendant, in what he did, proceeded in plain violation of the Harrison Act; and he cannot for a moment set up the defense of his conduct that, from his viewpoint, what he had done, though in

the teeth of the law, was in the interest of humanity. An excuse for violating every law would be readily found, if such a defense could be interposed. The meaning and purpose of the act, as respects physicians, is manifest, namely, not that they may not in a proper case, in good faith, prescribe drugs for a patient whose malady is such that in their professional judgment the drug is necessary, but only that they may so prescribe in good faith to their patients in the course of their professional practice; and, of course, this does not contemplate prescribing drugs for persons who merely desire the same to gratify their appetites or desires, or because of their unfortunate habit of the use of the same.

The defendant's instruction in effect involves the constitutionality of the act, in that it insists that in order to legally convict under the same it is necessary to establish, not only improper prescribing of the drug, but that in so doing the government was defrauded of its revenue. The constitutionality of the act has been settled, and is no longer open to discussion. United States v. Doremus, 249 U. S. 86, 39 Sup. Ct. 214, 63 L. Ed. 493; Webb v. United States, 249 U. S. 96, 39 Sup. Ct. 217, 63 L. Ed. 497. Under these decisions, and the cases therein cited, it is clear that, while it is necessary for the constitutionality of the act of Congress that the same should come within the scope of the taxing power of Congress, yet that the reason and purpose of Congress, and the real effect of the act, may properly be for a moral end, wholly different from the mere collection of revenue. The Circuit Court of Appeals of this circuit, speaking through Judge Woods, aptly answered this suggestion as follows:

"The Supreme Court has answered such objections by holding that in a revenue statute the Congress may make any rule or regulation which is not in itself unreasonable, although its effect on the revenue be only remote or incidental, and its effect on the public health or morals direct and obvious." Foreman v. United States, 255 Fed. 621, 166 C. C. A. 655.

A careful review of the decisions as they exist at the present time make clear the fact that, when a physician is charged with unlawfully selling or prescribing drugs under the Harrison Act, the case turns largely upon his good faith in prescribing drugs to his regular patients, for maladies requiring the administration of the drug, or whether he prescribed for persons seeking his professional aid merely to procure the drug. In the latter case the physician might, perhaps, in a single instance afford temporary relief for one whose condition demanded immediate treatment. To go further than this would enable every doctor to do just what the defendant did here—furnish the drug to addicts, or afford opportunity to them to procure all the narcotics they desired; as, unrestrained, they would go from one physician to another, and quickly destroy the whole purpose of the act in question.

The case of Thompson v. United States, 258 Fed. 196, 169 C. C. A. 264, a decision of the Circuit Court of Appeals for the Eighth Circuit, thus refers to this subject:

"The good faith of the defendant treating these persons as a physician, for the purpose of curing them from the narcotic habit, is the main and only issue involved in this case. The object of the act although enacted under the taxing power of Congress, was no doubt intended to prevent the

growing use of these narcotics, deemed a menace to the nation by Congress. * * * If physicians and the others mentioned in the exceptions can sell and dispense these narcotics, regardless of the fact whether it is done in good faith for the relief of a patient, then the moral object of the act is entirely defeated. It certainly cannot be claimed that a physician selling these narcotics, not in good faith, for the purpose of securing a cure of one suffering from an illness, or to cure him from the morphine habit, is doing so 'in the course of his professional practice only,' as prescribed by the express language of the act."

In the Trader Case, 260 Fed. 923, a decision of the Circuit Court of Appeals for the Third Circuit, the subject is likewise considered; the court using the following language:

"It is next urged that the trial judge was not justified in stating as he did in his charge, that, while the Harrison Act is a revenue measure, 'its clear purpose * * * is to restrict the distribution and use of opium and its derivatives to medicinal purposes only.' It is assuredly within the discretion of a trial judge, in charging a jury, to state the purpose, as he conceives it, that Congress had in passing any given act. If an erroneous statement of such a purpose may be considered reversible error in any case, we are entirely clear that, although the Harrison Act was passed pursuant to the taxing power of Congress and is clothed in the garb of a revenue act, the learned trial judge did not misconceive or misstate the broad underlying purpose which Congress had in passing it (United States v. Jin Fuey Moy, 241 U. S. 394–402, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854), and therefore that no harm was done the defendant by the statement in question."

From this decision a writ of certiorari was taken to the Supreme Court, and there denied. 251 U. S. 555, 40 Sup. Ct. 119, 64 L. Ed. 412. This would seem to be conclusive of the subject.

Since the last-named decision, the Supreme Court at the October term, 1920 (December 6, 1920), in the case of Jin Fuey Moy v. United States, 254 U. S. 189, 41 Sup. Ct. 98, 65 L. Ed. —— (a second decision under that name), rendered a far-reaching and most important opinion as respects the subject of this class of case, namely, as to what constitutes a sale under the Harrison Act, on the part of a physician, and the court held that the unlawful issue of a prescription by a doctor, was a selling of the prescribed drug, and an aiding and abetting therein, within the meaning of section 2 of the Harrison Act, and the provisions of section 332 of the Criminal Code (Comp. St. § 10506). In this decision, Mr. Justice Pitney, citing Webb v. United States, 249 U. S. 96, 39 Sup. Ct. 217, 63 L. Ed. 497, supra, speaking for the Supreme Court, said:

"Manifestly the phrases 'to a patient' and 'in the course of his professional practice only' are intended to confine the immunity of a registered physician, in dispensing the narcotic drugs mentioned in the act, strictly within the appropriate bounds of a physician's professional practice, and not to extend it to include a sale to a dealer or a distribution intended to cater to the appetite or satisfy the craving of one addicted to the use of the drug. A 'prescription' issued for either of the latter purposes protects neither the physician who issues it nor the dealer who knowingly accepts and fills it."

The assignments of error in this case are without merit, and the decision of the lower court will be affirmed.