## UNITED STATES v. BUSH.

(District Court, W. D. Louisiana, Shreveport Division. May 12, 1925.)

No. 4054.

Poisons ⬙9—Indictment held to charge offense under Narcotic Act.

An indictment held, to charge an offense, under Narcotic Act, § 2 (Comp. St. § 6287h), where it alleged that defendant was a practicing physician, and charged that he unlawfully and feloniously sold or gave away 12 grains of morphine sulphate, not in pursuance of a written order from the purchaser on the prescribed blank, but by issuance of a prescription to a person named who was not a patient of defendant, and that said prescription was not issued in the course of defendant's professional practice.

Criminal prosecution by the United States against A. R. Bush. On demurrer to indictment. Overruled.

Philip H. Mecom, U. S. Atty., and J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La.

J. M. Grimmet and William C. Barnette, both of Shreveport, La., for defendant.

On Demurrers and Motion to Quash.

DAWKINS, District Judge. The defendant in this case is charged with a violation of the federal narcotic law, known as the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q) in the following language: That the accused, "being then and there a practicing physician, did willfully, unlawfully, knowingly, and feloniously sell, barter, exchange, and give away certain derivatives and salts of opium, to wit, about twelve (12) grains of morphine sulphate, to R. H. Armstrong, whose name is to your grand jurors otherwise unknown, not in pursuance of a written order from said R. H. Armstrong, on a form issued in blank for that purpose by the Commissioner of Internal Revenue under the provisions of section 2 of

an Act of Congress dated December 17, 1914, called the Harrison Anti-Narcotic Act (38 Stat. 785), in the manner following, to wit: That the said A. R. Bush, at the time and place aforesaid, did issue and dispense to the said R. H. Armstrong, a certain prescription for twelve (12) grains of morphine sulphate, the said R. H. Armstrong not being then and there a patient of the said A. R. Bush, and that said morphine sulphate was then and there dispensed and distributed by the said A. R. Bush, not in the course of his professional practice only, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States." And in similar language the other counts charge defendant with the sale of the narcotics to other persons—the only difference being in the names of the individuals to whom the sales are alleged to have been made and the quantity of the drug sold.

In the case of Jin Fuey Moy v. United States, 254 U. S. 189, 41 S. Ct. 98, 65 L. Ed. 214, the Supreme Court of the United States had occasion to review on writ of error the decision rendered by the District Court of the United States for the Western District of Pennsylvania, and in which the indictment charged as follows: "That on a date specified, at Pittsburgh, in the county of Allegheny, in the Western district of Pennsylvania, and within the jurisdiction of the court, the defendant was a practicing physician, and did unlawfully, willfully, knowingly, and feloniously sell, barter, exchange, and give away certain derivatives and salts of opium, to wit, a specified quantity of morphine sulphate, to a person named, not in the pursuance of a written order from such person on a form issued in blank for that purpose by the Commissioner of Internal Revenue under the provisions of section 2 of the act, 'in manner following, to wit: That the said Jin Fuey Moy, at the time and place aforesaid, did issue and dispense' to the person named a certain prescription of which a copy was set forth, and that said person, 'was not then and there a patient of the said Jin Fuey Moy, and the said morphine sulphate was dispensed and distributed by the said Jin Fuey Moy not in the course of his professional practice only; contrary to the form of the act of Congress,' etc."—and which bill was sustained on review by the Supreme Court as being sufficient under the statute to denounce the offense.

To my mind, the two charges—that is, the one in the case now under consideration, and in the Jin Fuey Moy Case, which has just

been referred to—the substance of the charges, in so far as meeting the requirements of the statute and the doctrine laid down in the Jin Fuey Moy Case, are identical; that is, the bill charges the offense substantially in the language of the statute, and while the bill discloses that the defendant is a practicing physician, it does, in the language of the statute, declare that the prescribing was done not within the course of the professional practice of the physician or to a bona fide patient. Other decisions, including the Behrman Case, 258 U. S. 280, 42 S. Ct. 303, 66 L. Ed. 619, and the Webb and Goldbaum Case, 249 U. S. 96, 99, 39 S. Ct. 217, 63 L. Ed. 497, followed substantially the doctrine in the Jin Fuey Moy Case, and a later one known as the Doremus Case, 249 U. S. 86, 93, 95, 39 S. Ct. 214, 63 L. Ed. 493. However, in the opinion in Linder v. United States (handed down on April 13th), 45 S. Ct. 446, 69 L. Ed. ——, the Supreme Court dealt with the question of the right of a physician to prescribe narcotics for an addict, and held that this might be done for the purpose of relieving suffering incident to addiction.

When the question of constitutionality of this law went originally to the Supreme Court, that tribunal was, as illustrated in the Jin Fuey Moy Case, very much divided; the opinion being by a bare majority of five to four. But it was sustained, nevertheless, upon the theory that the statute, being primarily a revenue measure, in so far as its police provisions were concerned, was not a violation of the Constitution, for the reason that those regulations constituted a reasonable means of insuring the collection of the tax for which the act was passed. None of the decisions since that time, including the Linder Case, have served to change that conclusion and to disturb the holding that the statute is primarily a tax measure, and that the provisions and the restrictions upon the handling of narcotics were reasonable exercise of the power of Congress to insure collection of the tax.

In the Linder Case, that court has again reviewed the law at length, and held that a physician may prescribe for an addict, not with the view of curing the addiction, but solely for the purpose of alleviating the pain and suffering incident to addiction, and this upon the theory that, since Congress had no power to pass a purely police statute governing the subject-matter of the legislation, it could not penalize the exercise by the physician of his professional discretion in prescribing for a bona fide patient, even for the sole purpose of relieving suffering due to addiction.

As I construe the decisions of the court, the effect is substantially this: That while the statute, as a tax measure, is constitutional, nevertheless it must be construed by the courts in such a way as to effectuate collection of the tax, and cannot be used purely as a police measure, either as to physicians or others. I think the holding in substance is that the regulations requiring the registration and the issuance of prescribed forms for the sale, distribution, etc., of the drug, are reasonable provisions calculated to insure the collection of the tax, that none of the drugs shall be distributed without its payment, and that in any case where the result of the course pursued by a physician or others may reasonably have the effect of defeating the collection of that tax, then such acts may be penalized by the statute, and those guilty of such offenses may be charged within the language of the law and punished accordingly.

In other words, in my opinion, under the Linder Case, it would be lawful for a practicing physician, in treating a bona fide patient who had applied to him for that purpose, to prescribe what, in his professional opinion, in good faith was necessary for the alleviation of the pain and suffering incident to addiction, and, unless there appeared some lack of good faith or ulterior purpose calculated to defeat the collection of the tax, the courts would not be justified in condemning and regulating that discretion. On the other hand, I think it entirely possible for a physician to violate the statute by prescribing indiscriminately to all persons large doses of the drug, though the same quantity to a known addict who was a bona fide patient might be perfectly legitimate.

To illustrate: If the physician was pursuing a practice of issuing prescriptions indiscriminately to all who came, regardless of whether or not the applicant was an addict or person otherwise suffering with disease for which he thought the drug an appropriate remedy, so that there would be no limit upon the quantity of the drug that might go thus unrecorded into the hands of persons generally, that even this small quantity—that is, ten grains or less—would be a

violation of the statute; for it might enable the purchaser to resell the drug without paying the tax; hence, each case must depend upon its own facts as to whether the physician was or was not in good faith or acting within the scope of his professional practice in attending a bona fide patient.

The charge in this case is made in the language of the statute, and declares that, while the drug was distributed upon a prescription, the same was done, not within the course of professional practice or to a bona fide patient; and to my mind, these are allegations of fact, which, if sustained, would be sufficient to justify a conviction by a jury. However, if upon the trial it is shown, in contradiction of the charge itself, that the party to whom the drug was administered was a bona fide patient or person addicted to the habit, and for whom it was necessary to prescribe in order to alleviate pain and suffering, then a case would be presented which the court would be compelled, in the light of the Linder Case, to charge the jury to return a verdict of not guilty.

None of the decisions have indicated what would or would not be an unreasonable amount to be prescribed by a physician. I think the reason for this is, as above indicated, that each case must stand upon its own facts, and that, while in one case a physician might be guilty of violating the law for prescribing a small quantity, in another he would not be guilty in distributing a larger amount, dependent upon the circumstances of each particular case, because, if the purchaser was not an addict, nor a bona fide patient, and the drug was not necessary for the use of that individual, he might easily go out and sell it to the public, thus engaging in the retail distribution of the drug without having registered or paid the tax which the statute imposes, and thereby defeating the purpose of the statute, which is, primarily, to collect a tax upon the drug.

I think the bill in the Linder Case alleged facts which fully disclosed that the physician was prescribing a reasonable amount of the drug for an addict, so that upon its face it appeared there was not a reasonable prospect of the collection of the tax being defeated, and then, too, as pointed out by the court, there was no allegation of want of good faith, or that the physician was not acting within the scope of his professional practice, or prescribing for a bona fide patient.

Therefore, for the above reasons, the demurrer is overruled.