---

William M. Steger, Longview, Tex., Harlon E. Martin, Tyler, Tex., for plaintiff.

Baldwin & Votaw, Beaumont, Tex., for defendant.

DAWKINS, District Judge.

This case comes up on a motion to dismiss the indictment and in the alternative for a bill of particulars, on the ground that none of the ten counts "is sufficient in law to constitute an offense against the laws of the United States of America".

To illustrate the language of all the first five charges, the second count is quoted as follows:

> "On or about the 16th day of October, 1951, at Beaumont, within the Beaumont Division of the Eastern District of Texas, Rogers Pierson did then and there unlawfully and falsely make, and cause to be falsely made, a certain writing purporting to be a prescription for narcotic drugs issued to one Bob Parker, 1063 Texas, Beaumont, Texas, which said writing is described in tenor as follows: (Here appears a photostatic copy of the prescription which is the

**UNITED STATES v. PIERSON.**
Crim. A. No. 5008.

United States District Court
E. D. Texas, Beaumont Division.

Nov. 6, 1953.

usual form used by doctors, bearing the defendant's name 'Rogers Pierson, M. D., Physician and Surgeon', giving his address, and his registry number as a doctor entitled to prescribe narcotics. At the bottom, appears the name of 'San Jacinto Drug Store' and its address in San Jacinto Building in Beaumont, Texas.) for the purpose of defrauding the United States in the exercise of its governmental functions."

Just before each count appears: "Vio. Ti. 18, U.S.C. Sec. 494 (Not more than $1,000 or not more than 10 years, or both)".

Counsel for the government quote the applicable law in their brief as follows:

"The indictment is predicated upon Title 18, United States Code, Section 494, the pertinent part of which statute as related to Counts One to Five, inclusive, reads as follows:

" 'Whoever falsely makes, alters, forges, or counterfeits any bond, bid, proposal, contract, guarantee, security, official bond, public record, affidavit, or other writing for the purpose of defrauding the United States; * * *' "

The part relating to Counts Six to Ten, inclusive, is also quoted as follows:

" 'Whoever utters or publishes as true or possesses with intent to utter or publish as true, any such false, forged, altered, or counterfeited writing, knowing the same to be false, forged, altered, or counterfeited; * * *' "

All of the first five counts are the same except the photostatic copies of the prescriptions; as are those from six to ten, inclusive, using the same names, and dates, in numerical order as in the first five. No. 7, which corresponds to No. 2 above, is also quoted:

"On or about the 16th day of October, 1951, at Beaumont, within the Beaumont Division of the Eastern District of Texas, Rogers Pierson did then and there unlawfully and fraudulently utter and publish as

true a certain falsely made writing, to wit, a writing purporting to be a prescription for narcotic drugs issued to Bob Parker, 1063 Texas, Beaumont, Texas, which said writing in tenor is fully described in Count Two of this indictment, the photostatic copy of such writing attached to and incorporated into Count Two of this indictment being referred and made a part of this count by reference the same as if fully described herein, the said Rogers Pierson then and there well knowing that said writing purporting to be a prescription for narcotic drugs was false."

None of the first five counts gives any information as to why, how, or in what respect, the prescriptions were false, that is, whether the persons in whose names they were written were fictitious, or whether, as in United States v. Tommasello, 2 Cir., 160 F.2d 348, 349, they were false in the sense that in reality they were intended and were actually used to acquire narcotics for the use and consumption of the doctor who wrote them. If, in this case, the prescriptions were intended for and written in the names of persons who actually existed, were genuinely signed by the defendant, a qualified physician, duly registered and possessing a permit to prescribe the drugs, as would appear on their faces, then they were not false, whatever the purpose might have been, within the meaning of Title 18 U.S.C. § 494. Counsel for the government cites the Tommasello case along with others in support of the first group of counts, that is, one to and including five. In that case the indictment, as here, quoted the prescription in full and then proceeded to say: "with intent thereby to defraud the United States of America by procuring narcotic drugs for the personal use of the said defendant, Stanley Tommasello, and not for Peter Del Giudice, of 32 Spring Street, New York, as set forth in said prescription, the said defendant then and there well knowing the same to be false in that the narcotics referred to in the

said aforesaid prescription were for his own personal use and not for the use of the said Peter Del Giudice; against the peace and dignity of the United States and contrary to the form of the statue in such case made and provided."

The Court of Appeals for the Second Circuit in that case pointed out the nature of the fraud charged in the following language:

"It appears from the foregoing that the substance of the charge against the defendant embodied in the second count of the indictment is that he knowingly issued a false prescription for narcotics for the purpose of defrauding the United States by representing that the drugs applied for therein were for the use of one Peter Del Giudice, whereas they were in fact for his own personal use.

"(1) It is argued on behalf of the defendant that the prescription, purporting to be for Del Giudice but not actually intended for him, was not 'false, forged, altered, or counterfeited,' and hence not within the interdiction of Title 18, § 72 of the U.S.C.A. This contention is founded on such decisions as United States ex rel. Starr v. Mulligan; 2 Cir., 59 F.2d 200, and Fitzgibbons Boiler Co. v. Employers' Liability Assur. Corp., 2 Cir., 105 F.2d 893, where, as in the case at bar, the signatures to the writings were genuine. But the writing the defendant issued was merely a false prescription which set out the name of the patient as Del Giudice when the narcotics were not intended for him, but for the use of the defendant himself. Such a paper was not a real prescription but a counterfeit one. As Justice Day said in Webb v. United States, 249 U.S. 96, 39 S.Ct. 217, 218, 63 L.Ed. 497, when dealing with an order issued by a physician to a known addict to supply the latter with drugs only to keep him comfortable: 'to call such an order for the use of morphine a physician's prescription would be so plain a perversion of meaning that no discussion of the subject is required.' See also Yeager v. United States, 59 App.D.C. 11, 32 F.2d 402; Ex parte Hibbs, D.C. Or., 26 F. 421, 431, et seq.

"(2) It is contended, however, that Section 72, supra, was not violated for the reason that the defendant did not utter the counterfeit prescription 'for the purpose of defrauding the United States' since he might have obtained the drugs either from a wholesaler on a written order and then have administered them to himself without disclosing the latter fact, or might have drawn the prescription for his own benefit and then treated himself. But in the first case he would have been obliged to keep a record of the drugs obtained and the amounts dispensed, 26 U.S.C.A. Int.Rev.Code, § 2554(c) (1), and in the second (where he issued a prescription) the prescription would have to be retained for two years by the apothecary so as to be readily accessible for inspection by agents of the Treasury Department. 26 U.S.C.A. Int.Rev. Code, § 2554(c) (2). The United States is defrauded within the meaning of the authorities when a person subject to the provisions of the narcotic act, as Tommasello was, interferes with the system of recording the disposition of narcotics as he is alleged to have done in the present case. It would not be necessary for him to attempt to secure any monetary advantage. Johnson v. Warden, 9 Cir., 134 F.2d 166, certiorari denied 319 U.S. 763, 63 S.Ct. 1320, 87 L.Ed. 1714; United States v. Goldsmith, 2 Cir., 68 F.2d 5, 7. A deliberate falsification of the records, required by statute, for the dispensation of narcotics defrauds the United States within the meaning of 18 U.S.C.A. § 72. Such a falsification was accomplished by Tommasello through inserting the name of Del Giudice in the prescrip-

tion for morphine tablets when they were only to be used by himself."

Hart v. Squier, 9 Cir., 159 F.2d 639, certiorari denied 331 U.S. 815, 67 S.Ct. 1203, 91 L.Ed. 1833, also described the nature of the falsification of the prescription which was used or uttered as follows:

> "That Gordon Leonard Hart, alias Melvin G. Baker, alias J. R. Kelly, alias John Prutil, alias A. Russell, whose true and full name is to the grand jurors unknown, on or about the 31st day of August, 1945, at Seattle, in the Northern Division of the Western District of Washington, and within the jurisdiction of this Court, then and there being, did then and there knowingly, wilfully, unlawfully and feloniously, and for the purpose of defrauding the United States, utter and publish as true upon one W. A. Look, a pharmacist, a certain false writing, being a prescription for narcotic drugs issued by Wm. C. Riddell, M. D., a registered physician, and purportedly issued to Melvin G. Baker, 902, 6th Avenue, Seattle, Washington, which was the false and fictitious name and address given by the said defendant, thereby to procure a certain derivative of opium, to wit, One-half (½) grain of Dilaudid, the said Gordon Leonard Hart, alias Melvin G. Baker, alias J. R. Kelly, alias John Prutil, alias A. Russell, then and there well knowing the same to be false and fictitious as aforesaid; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

These cases are illustrative of the types urged by the government in support of its present indictment. It seems obvious that they are easily distinguishable in that they do state how, why, and in what manner the prescriptions were false and fraudulent. In this latter case the charge was of using or uttering the false and fraudulent prescription, and the court again, as in the Tommasello case, pointed out the allegations of fact which removed it from the category of an insufficient indictment. In other words, it gave some notice to the accused of the facts which the government would attempt to prove in support of the charges of fraud.

Counsel for the government have cited a number of cases to the effect that where the wording of the indictment is in the language of the statute, it is sufficient. Some of these will be analyzed as follows:

Norris v. United States, 152 F.2d 808, 809. The defendants were charged with robbery and the Court of Appeals for this, the Fifth Circuit, quoted the pertinent part of the indictment, to the effect that accused "did rob one Frank Clarkson of an automobile (describing it) belonging to the United States" contrary to the statute, etc. The proof, which supported the charge, showed that Clarkson was a federal game warden "using a government owned car when the robbery was committed". The court then proceeded to define robbery according to the well known definition of that crime, and added: "One who is present and aids or abets a robbery is punishable as a principal, though he receives none of the money; and the amount taken is immaterial." In discussing the matter, the court said: "The questions presented on this appeal are whether the indictment was defective and, if so, whether the substantial rights of the parties were prejudicially affected." Reference is then made to the Act of February 26, 1919, 28 U.S.C.A. § 391, now Fed.Rules Civ.Proc. rule 61, 28 U.S.C.A., which directs an appellate court to examine the record "without regard to 'technical errors, defects, or exceptions which do not affect the substantial rights of the parties'". Judge Holmes emphasized the fact that the appellate court was acting under this statute in a case which had been tried, not where, as here, we are called upon to decide in the first instance whether an accused is entitled to more definite information of the nature of the charge, and in answer to the contention that it did not specify the acts done or manner

of committing the robbery, said: "By turning to a dictionary, the appellants could have informed themselves that the word rob means, in law, 'to take the property of (any one) from his person, or in his presence, feloniously and against his will, by violence or by putting him in fear.'" It next stated that the "definition * * * contains all the elements required by the most punctilious observance of common-law pleading." The accused never asked for a bill of particulars, but requested the court to charge the jury "on the subject of robbery", which it did "fully" and "there was no exception to the charge".

In the present case, the indictment simply says that the defendant "did then and there feloniously make, and cause to be falsely made, a certain writing purporting to be a prescription for narcotic drugs issued to one Bob Parker", giving his address, "which said writing is described in tenor as follows:" by the insertion of a photostatic copy of the prescription, which on its face, has every appearance of a genuine prescription issued by a doctor authorized to do so and the count ends with the words "for the purpose of defrauding the United States in the exercise of its governmental functions". No attempt whatever is made to say or to describe the nature of the falsity or fraud.

In Ledbetter v. United States, 170 U.S. 606, 18 S.Ct. 774, 775, 42 L.Ed. 1162, the court said:

"By section 16 of the act of February 8, 1875, [c. 36, 18 Stat. 307, 310 ], under which defendant was convicted, it is provided that 'any person who shall carry on the business of a * * * retail liquor dealer * * * without having paid the special tax as required by law * * * shall, for every such offense, be fined,' etc.; and the first count of the indictment charged, in the very words of this section, that the defendant 'did then and there willfully, unlawfully, and feloniously carry on the business of a retail liq-

uor dealer without having paid the special tax therefor, as required by law, contrary to the statute in such case made and provided, and against the peace and dignity of the United States of America.'

"Defendant insists that it was not sufficient to charge him with the offense in the language of the statute, but that the indictment should have set forth the particular facts which showed that he was a retail liquor dealer, and should also have averred that he had not paid the tax of $25 provided by law."

It was then stated that section 18 of the statute involved provided a special tax of $25, and that every person who sold liquors 'in less quantities than five wine gallons at the same time, shall be regarded as a retail dealer in liquors'". It was said in effect that by using the language of the statute all the accused had to do was to read this section of the law to know how to make his defense. Here, again, the defendant was informed of the nature of the offense by the language used, and there was no uncertainty about who was, within its meaning, a retailer.

It is thought sufficient to simply quote the four syllabi in Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861:

"1. Defendants were convicted in the District of Columbia upon an indictment under § 215 of the Criminal Code, charging that, having devised there a scheme to defraud a named corporation in manner and form set forth, they did, for the purpose of executing the scheme, place in a designated post office in Pennsylvania, to be sent and delivered by the post office establishment to the addressee thereof, certain accounts enclosed in an envelope addressed to the company at a stated address in the District of Columbia. The indictment did not allege specifically that they caused the letter to be delivered by mail according to the di-

rection thereon. *Held* that against objection first made by motion in arrest, and upon a record not containing the evidence or instructions, the indictment should be sustained as charging an offense committed within that District, because of the presumption that the letter was delivered there. Pp. 429–431.

"2. Proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed. And the fact that receipt of the letter subjects the person sending it to a penalty does not alter the rule. P. 430.

"3. The rigor of old common law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. P. 431.

"4. Rev.Stats., § 1025 does not dispense with the rule which requires that the essential elements of an offense must be alleged; but it authorizes the courts to disregard merely loose or inartificial forms of averment. Upon a proceeding after verdict at least, no prejudice being shown, it is enough that necessary facts appear in any form, or by fair construction can be found within the terms of the indictment. P. 433."

It was contended by the accused that "the indictment charges no offense committed in the District of Columbia, but only an offense committed in the State of Pennsylvania * * *". It came up on a motion in arrest of judgment, and defendant contended that the bill did not charge that he "caused the letter to be delivered by mail, according to the direction written thereon". This was answered by the statement that the jurisprudence was settled to the effect that once mailing of a letter is proven a "presumption" arises "that it reached its destination" and it was not necessary to allege the same.

In Cohen v. United States, 6 Cir., 178 F.2d 588, 589 defendant was charged under section 1731(a), Title 12 U.S.C.A., with having made and caused to be passed, uttered and published an "FHA Title I Credit Application * * * with the intent that such loan should be offered to the FHA for insurance, and for the purpose of influencing the action of the FHA," and with the statement that "such document was false *in that the signatures were obtained by fraud and misrepresentation, and none of the signers intended to apply for an advance of credit*" and that they were submitted for action "*without the knowledge or consent of the signers*". The court then said:

"The indictment was drawn in the language of the statute, and each count supplies the specific information applicable to the particular transaction described therein. This is in general sufficient. Rule 7c, Federal Rules of Criminal Procedure, 18 U.S.C.A.; Sutton v. United States, 5 Cir., 157 F.2d 661; Mellor v. United States, 8 Cir., 160 F.2d 757; Robertson v. United States, 5 Cir., 168 F.2d 294.

"Here it is contended, however, that the indictment does not inform appellants of the nature of the offense because it charges that the false signatures were obtained by fraud and misrepresentation, and the details of the fraud and misrepresentation are not set forth."

It was held that the details of how signatures were obtained were immaterial and evidentiary and did not have to be alleged.

In the present case the charges of fraud amount to nothing more than legal conclusions for they state no facts, which if proven, would disclose such fraud; whereas in all the cited cases it is believed enough factual matter was stated to inform the accused of what he would have to meet.

In the present case, as stated earlier, this is left entirely to the imagination and the motion to dismiss should be sustained.