Thomas Guy BROWN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16536.

United States Court of Appeals
Fifth Circuit.

Jan. 3, 1958.

Rehearing Denied Feb. 8, 1958.

———◆———

Ben Monning, Jr., Monning & Monning, Amarillo, Tex., for appellant.

Heard L. Floore, U. S. Atty., Fort Worth, Tex., William J. Risteau, Atty., Dept. of Health, Education, and Welfare, Washington, D. C., of counsel, for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from the conviction of a physician for the violation of provisions of the Food, Drug and Cosmetic Act that prohibits the *dispensing* of certain potentially harmful drugs, transported in interstate commerce, without a *prescription*.

The evidence fully warranted the jury's finding that the appellant, a practicing physician in Dumas, Texas, sold to two Federal agents, whom he supposed to be truck drivers, three separate lots of dextro-amphetamine hydrochloride tablets [1] that had been shipped in interstate commerce; that prior to dispensing them Dr. Brown had not prepared or given them any prescription and had not physically examined either of them and had not questioned them or "prescribed" a dosage or otherwise attempted to acquaint himself with either the physical condition or needs of either man.

The statute under which the three-count indictment was brought makes illegal and punishable as for a misdemeanor, under circumstances here present, a violation of the following provisions of 21 U.S.C.A. § 353(b) (1):

"A drug intended for use by man which * * *.

"(B) Because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such a drug;

* * * shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an

1. The testimony, denied by the accused, was to the effect that the agent Spivak obtained 1000 5-mg. tablets on March 10th, 1000 10-mg. tablets on March 22nd, and that, in the presence of Spivak, another agent, Keeting, received 1000 5-mg. tablets on March 23rd.

oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or (iii) by refilling any such written or oral prescription if such refilling is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist. The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale." 21 U.S.C.A. § 353(b) (2).

Although the appellant denies the sales, implying that the transactions with the two agents were of quite a different nature, he makes no contention that there was not sufficient evidence to sustain the conviction if the terms of this statute reach a regularly licensed physician who sells these covered drugs under the circumstances outlined. The burden of his defense is that the provisions of the Act do not apply to the act of dispensing drugs by a licensed physician.

No decided case in which an appellate court has precisely held this law applicable to the conduct of a regularly licensed physician has been called to our attention. The Court of Appeals for the Tenth Circuit affirmed a conviction of one who held himself out to be a doctor, but who had not obtained a medical license in Archambaut v. United States, 10 Cir., 224 F.2d 925. The District Court for the Western District of Missouri construed the law as here contended for by the United States where it entered a judgment of conviction on a plea of nolo contendere against a doctor who dispensed pills of the proscribed type without an examination or prescription. In sentencing the prisoner, the district judge, now Supreme Court Justice Whittaker, said:

"Your error lies in the fact that, having a license to practice medicine, you have assumed that it was a license to peddle pills, and that is not the law. People came to you,

Doctor, and without an examination or any prescription, just ordered pills and you would ask them, 'Do you want the red or the yellow?' —and you just handed out the pills, these barbiturates and sex hormones, without any examination or prescription. You did that to those Government agents who came in there, not once but half a dozen times.

"Now, there seems to be some concept among the members of the medical profession that to have a license to deal in medicine carries a license to deal in barbiturates. That is not the law. The medical profession might just as well understand it. If I come to you for treatment and you, in your medical capacity examine me, and after examination determine that certain barbiturates would be beneficial to me, then you have a right to write a prescription to me, and then I have a right to get them and use them, but not otherwise." United States v. Amin Boutros, (D.C.W.D. Mo.) No. 19,304–Cr. Decided Dec. 23, 1955.

The language of the statute, considered alone, is certainly broad enough to make criminal what was done here. It says expressly that these pills "shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or (iii) by refilling any such * * *." The 3000 tablets were acquired by the "purchasers," who were not "patients," without either a written or oral prescription, no matter how broadly the word "prescription" is to be construed.

Appellant argues only that although the language is broad enough to include physicians, the statute must be interpreted differently and for this proposition he refers to the discussion in the legislative history of the apparent purpose to make the requirements applicable

to "druggists." But we do not need to refer to the legislative history of this particular act to construe the statute. The Supreme Court has on several occasions held that the purpose of the legislation is the protection of the people from dangerous products which are shipped in interstate commerce. United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48; United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297. Further, the Court, in Kordel v. United States, 335 U.S. 345, 349, 69 S.Ct. 106, 109, 93 L.Ed. 52, said:

> " * * * there is no canon against using common sense in reading a criminal law, so that strained and technical constructions do not defeat its purpose by creating exceptions from or loopholes in it." 335 U.S. 345, 349, 69 S.Ct. 106, 109.

Moreover, the Supreme Court has also construed the word "prescription" as used in other related Federal legislation. Recognizing as we do, that under the Harrison Narcotic Act, 26 U.S.C.A. §§ 2550 et seq., 3220 et seq., the question of good faith treatment of patients may be involved, nevertheless we find, in a Harrison Act case, pertinent language describing a "prescription." The Court answered a certified question from the Court of Appeals for the Sixth Circuit:

> "3. If a practicing and registered physician issues an order for morphine to an habitual user thereof, the order not being issued by him in the course of professional treatment in the attempted cure of the habit, but being issued for the purpose of providing the user, with morphine sufficient to keep him comfortable by maintaining his customary use, is such order a physician's prescription under exception (b) of section 2?" Webb v. United States, 249 U.S. 96, 99, 39 S.Ct. 217, 218, 63 L.Ed. 479.

The answer, obvious it seems to any who consider the matter was:

> "As to question three—to call such an order for the use of morphine a physician's prescription would be so plain a perversion of meaning that no discussion of the subject is required. That question should be answered in the negative." Webb v. United States, 249 U.S. 96, 100, 39 S.Ct. 217, 218.

What was there said by the Supreme Court answers, we think, appellant's objection to the court's charge that the jury might properly consider whether a doctor-patient relationship existed.[2] The inquiry whether there was a bona fide relationship of patient and doctor bears on the question whether there had ever been a "prescription" for the agents. The court thus broadened the term to something more than written paper, which really benefitted the accused. The jury, under this charge, could have found that Dr. Brown "prescribed" for the men if the jury had found the existence of a doctor-patient relationship which appellant testified vaguely did exist, at least as to two of the sales. There was no error in submitting this issue to the jury.

We conclude that the jury had ample grounds for finding that Dr. Brown dispensed the tablets without prescription and we find that such action is prohibited under the law, even when done by a regularly licensed physician.

The judgment is affirmed.

2. The charge was:
"If you find that the defendant did dispense the original contents of Government Exhibits 1, 2 and 3, two of them to the Government witness Spivak, and the other to the Government witness Keeting, then in determining whether he dispensed the drugs therein on prescription, you may properly consider whether a doctor-patient relationship existed between the defendant and the person to whom you find he sold the bottle of drug in each instance, whether he considered the individual needs of the person to whom he dispensed the drug, the quantity of the drug dispensed and the manner in which he supervised the use of the drug. The fact that the defendant is a physician licensed under the laws of Texas does not exempt him from responsibility for any violation of the terms of the Federal law in question."