**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Henry M. COLLIER, Jr., M. D.,**
**Defendant-Appellant.**

**No. 72–3242.**

United States Court of Appeals,
Fifth Circuit.

May 1, 1973.

B. Clarence Mayfield, Robert E. Barker, Savannah, Ga., for defendant-appellant.

R. Jackson B. Smith, Jr., U. S. Atty., Augusta, Ga., Lamar C. Walter, Asst. U. S. Atty., Savannah, Ga., for plaintiff-appellee.

Before COLEMAN and SIMPSON, Circuit Judges, and ESTES, District Judge.

ESTES, District Judge:

Dr. Henry M. Collier, Jr., a physician authorized to dispense controlled substances, pleaded guilty to six counts of violating 21 U.S.C. § 841(a)(1) by distributing a controlled substance, methadone, a synthetic opiate,[1] while not acting in the usual course of his professional practice and was fined $20,000. Dr. Collier's appeal consists exclusively of a multi-faceted attack upon the constitutionality of 21 U.S.C. § 841(a)(1) as applied to physicians.

 Dr. Collier's primary contention is that § 841(a)(1), as applied to physicians, is unconstitutionally vague. This argument centers on the basis that Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and the regulations issued pursuant to the act[2] make it illegal for a

---

1. Methadone is listed in schedule II, which consists of drugs which have a high potential for abuse, have a currently accepted medical use with severe restrictions, and, if abused, may lead to severe psychological or physical dependence. 21 U.S.C. § 812.

2. The following are the pertinent provisions of Title II of the act and the regulations promulgated pursuant to the act: 21 U.S.C. § 841 Prohibited acts A—Penalties

(a) Except as authorized by this [title,] it shall be unlawful for any person knowingly or intentionally—

(1) to . . . distribute, or dispense . . . a controlled substance . . .

21 U.S.C. § 829 Prescriptions

(a) Except when dispensed directly by a practitioner, other than a pharmacist, to an ultimate user, no controlled substance in schedule II . . . may be dispensed without the written prescription of a practitioner . . . .

21 U.S.C. § 821 Rules and regulations

The Attorney General is authorized to promulgate rules and regulations and to charge reasonable fees relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances.

21 C.F.R. § 306.11 Requirement of prescription

(b) An individual practitioner may administer or dispense directly a controlled substance listed in schedule II in the course of his professional practice without a prescription, subject to § 306.07.

21 C.F.R. § 306.07 Dispensing of narcotic drugs for maintenance purposes

The administering or dispensing directly (but not prescribing) of narcotic drugs listed in any schedule to a narcotic drug dependent person for the purpose of continuing his dependence upon such drugs in the course of conducting an authorized clinical investigation in the development of a narcotic addict rehabilitation program shall be deemed to be within the meaning of the term "in the course of his professional prac-

physician to dispense directly to the ultimate user a schedule II controlled substance other than "in the course of his professional practice." Appellant contends that those words do not warn the physician of what conduct is proscribed, and that the statute is without objective standards and is subject to diverse interpretation. Although this issue has not been previously determined concerning the present act, the same standard has been judicially interpreted in prior federal drug statutes.[3] Manifestly the language "in the course of professional practice" is intended to limit the immunity of a licensed practitioner. It is apparent that a licensed practitioner is not immune from the act solely due to his status, White v. United States, 399 F.2d 813 (8 Cir. 1968), but rather, because he is expected to prescribe or dispense drugs within the bounds of his profes-

---

tice or research" in section 308(e) of the Act (21 U.S.C. 828(e)): *Provided,* That approval is obtained prior to the initiation of such a program by submission of a Notice of Claimed Investigational Exemption for a New Drug to the Food and Drug Administration which will be reviewed concurrently by the Food and Drug Administration for scientific merit and by the Bureau for drug control requirements, and that the clinical investigation thereafter accords with such approval, as required in § 130.44 of this title.

21 C.F.R. § .306.04 Purpose of issue of prescription

(a) A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner. . . .

21 U.S.C. § 802 Definitions

As used in this title:

(1) The term "addict" means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction.

(2) The term "administer" refers to the direct application of a controlled substance to the body of a patient or research subject by—

(A) a practitioner (or, in his presence, by his authorized agent), or

(B) the patient or research subject at the direction and in the presence of the practitioner,

whether such application be by injection, inhalation, ingestion, or any other means.

* * * * *

(6) The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this title [21 USC § 812].

* * * * *

(8) The terms "deliver" or "delivery" mean the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship.

* * * * *

(10) The term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling, or compounding necessary to prepare the substance for such delivery. The term "dispenser" means a practitioner who so delivers a controlled substance to an ultimate user or research subject.

(11) The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance. The term "distributor" means a person who so delivers a controlled substance.

* * * * *

(20) The term "practitioner" means a physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, or other person licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices or does research, to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research.

3. The Harrison Narcotic Act, Dec. 17, 1914, Ch. 1, 38 Stat. 785 (repealed by the Comprehensive Drug Control Act of 1970), and the Drug Abuse Control Amendments of 1965 of the Federal Food, Drug and Cosmetic Act, July 15, 1965, Pub.L. 89–74, § 4, 79 Stat. 232 (repealed by the Comprehensive Drug Control Act of 1970).

sional practice of medicine. A physician is restricted to dispensing or prescribing drugs in the bona fide treatment of a patient's disease, including a dispensing of a moderate amount of drugs to a known addict in a good-faith attempt to treat the addiction or to relieve conditions or suffering incident to addiction. Linder v. United States, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819 (1925); Boyd v. United States, 271 U.S. 104, 46 S.Ct. 442, 70 L.Ed. 857 (1926); United States v. Brandenburg, 155 F.2d 110 (3 Cir. 1946); Strader v. United States, 72 F.2d 589 (10 Cir. 1934). However, under the guise of treatment a physician cannot sell drugs to a dealer nor distribute drugs intended to cater to cravings of an addict. Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 95 L. Ed. 214 (1920); United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493 (1919); Webb v. United States, 249 U.S. 96, 39 S.Ct. 217, 63 L.Ed. 497 (1919); United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922). Congress did not intend for doctors to become drug "pushers." United States v. Warren, 453 F.2d 738 (2 Cir.), cert. denied, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972); White v. United States, 399 F.2d 813 (8 Cir. 1968).

In making a medical judgment concerning the right treatment for an individual patient, physicians require a certain latitude of available options. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 747, 35 L.Ed.2d 201 (1973). Hence, "[w]hat constitutes *bona fide* medical practice must be determined upon consideration of evidence and attending circumstances." Linder v. United States, *supra*, 268 U.S. at 18, 45 S.Ct. at 449.

■ That statutes affecting medical practice need not delineate the precise circumstances constituting the bounds of permissible practice is clearly illustrated by two recent cases in which the Supreme Court was called upon to consider whether certain abortion statutes were unconstitutionally vague in distinguishing between legal and illegal abortions.

In United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971), a District of Columbia statute made abortions illegal unless "necessary for the preservation of the mother's life or health." The Court held that the term "health" included psychological as well as physical well-being and, holding that the statute presented no problem of vagueness, concluded:

"Indeed, whether a particular operation is necessary for a patient's physical or mental health is a judgment that physicians are obviously called upon to make routinely whenever surgery is considered."

402 U.S. at 72, 9 S.Ct. at 1299.

In Doe v. Bolton, 410 U.S. 179, 93 S. Ct. 739, 35 L.Ed.2d 201 (1973), a Georgia statute which provided that it was illegal for a physician to perform an abortion except "based upon his best clinical judgment that an abortion is necessary" was attacked as vague because the word "necessary" was undefined. The Court held the language not vague because "whether . . . 'an abortion is necessary,' is a professional judgment that the Georgia physician will be called upon to make routinely." 93 S.Ct. at 747. Similarly here the physician must make a professional judgment as to whether a patient's condition is such that a certain drug should be prescribed.

■ Appellant next contends that the statute violates the Tenth Amendment by invading the state's residual police powers, in particular the power to control medical practice. The Tenth Amendment does not operate upon a valid exercise of power delegated to Congress by the Commerce Clause. Similar attacks upon § 841(a)(1) as invading the police power reserved to the states because the statute does not require a showing that the individual acts prosecuted affected interstate commerce have already been rejected by both the Fifth and Sixth Circuits. United States v. Lopez, 459 F.2d 949 (5 Cir. 1972); United States v. Scales, 464 F.2d 371 (6 Cir.

1972). These cases held that § 841(a) clearly constituted a permissible exercise of Congress's powers under the Commerce Clause. Since Congress itself has already determined that local distribution and possession of controlled substances have a substantial and direct effect upon interstate commerce, 21 U.S.C. § 801, the only function of the courts is to determine whether the particular class of activities regulated is within the federal power. Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); United States v. Lopez, *supra*. Appellant is a member of a class with legal access to drugs and a legal right to deliver or authorize delivery of drugs to other persons. An absolute exemption of this class from appropriate controls would enable drugs to be diverted from legitimate channels to an illegal market. For this very purpose Congress fashioned the Comprehensive Drug Control Act to provide "a 'closed' system of drug distribution for legitimate handlers of such drugs. Such a closed system should significantly reduce the widespread diversion of these drugs out of legitimate channels into the illicit market, while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control." H.R.Rep.No.91–1444, 91st Cong. 2d Sess., U.S.Code Cong. & Admin.News, pp. 4566, 4571–4572 (1970). Congress could reasonably decide that in order to effectively regulate interstate commerce in drugs, it was necessary to insure that persons within legitimate distribution channels, including the dispensing physicians and pharmacists, did not divert drugs into the illicit market.[4]

■ Another contention of Dr. Collier is that the Act unconstitutionally negates the presumption of innocence. Title 21 U.S.C. § 885(a)(1) provides that it shall not be necessary for the prosecution to negative any exemption in the indictment or trial and that "the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit." In considering the issue of burden of proof, one must distinguish between the burden of persuasion and the burden of going forward with the evidence. Of course, the burden of persuading the jury beyond a reasonable doubt that the defendant committed every essential element of the offense charged remains upon the prosecution throughout the trial. This precise constitutional attack on the predecessor to the present act was rejected by this Circuit in United States v. Ramzy, 446 F.2d 1184 (5 Cir. 1971). See also, United States v. Rowlette, 397 F.2d 475 (7 Cir. 1968).

■ Appellant next contends that the maximum punishment established by 21 U.S.C. § 841(b)(1)(A) for violation of § 841(a), 15 years of imprisonment or a $25,000 fine or both for cases involving a schedule II controlled substance, is a cruelly excessive punishment when applied to physicians prescribing methadone for the treatment of heroin addicts. It is unnecessary for us to decide this contention, since appellant was not sentenced to any confinement. Nor can appellant rely upon a Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed. 2d 758 (1962), argument that any punishment would be cruel and unusual for he was prosecuted not on the basis of his status as a physician but on the basis that he illegally distributed controlled substances other than in the course of his professional practice.

---

4. Several past cases demonstrate that certain unscrupulous persons, who are found in the medical as well as other professions, would welcome a cloak of immunity as an invitation to become large-scale "pushers." Webb v. United States, 249 U.S. 96, 39 S. Ct. 217, 63 L.Ed. 497 (1919); Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 95 L.Ed. 214 (1920); United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922); Direct Sales Co. v. United States, 319 U.S. 703, 63 S. Ct. 1265, 87 L.Ed. 1674 (1943); United States v. Brandenburg, 155 F.2d 110 (3 Cir. 1946); White v. United States, 399 F.2d 813 (8 Cir. 1968).

Hence this case does not come within the penumbra of the *Robinson* decision.[5]

■ Dr. Collier's last contention is that there is a constitutionally protected right to privacy in the physician-patient relationship which is violated by the Comprehensive Drug Control Act. We find this contention meritless. Appellant has ignored the fact that the statute does not invade the legitimate doctor-patient relationship when the doctor may dispense or prescribe drugs for medical reasons, but bars only activities outside the physician's professional practice, where a physician acts, in essence, as a "pusher." There is no constitutional protection of such activity.

Therefore, the conviction of Dr. Collier is

Affirmed.

5. A five-year sentence for a physician for violating the Harrison Narcotic Act, by prescribing drugs other than in the course of his professional practice, has been held not to be cruel and unusual punishment. Boehm v. United States, 21 F.2d 283 (8 Cir. 1927).